775 So.2d 555 (2000)
SUCCESSION OF Daisy Brouillette CHAUFFEPIED.
No. 00-00472-CA.
Court of Appeal of Louisiana, Third Circuit.
November 8, 2000.
Maxwell J. Bordelon, Marksville, LA, Counsel for Plaintiff-Appellee Lana Brouillette.
Darrel D. Ryland, Marksville, LA, Counsel for Defendants-Appellants Arlene Brouillette and Buford Dauzat.
(Court composed of Hon. JOHN D. SAUNDERS, Hon. JIMMIE C. PETERS, and Hon. GLENN B. GREMILLION.)
GREMILLION, Judge.
In this case, the defendants, Arlene Brouillette and Buford Dauzat, appeal the trial court's judgment vacating the orders probating the testament of Daisy Chauffepied and appointing Arlene Brouillette executrix of the succession. For the following reasons, we affirm.

*556 FACTUAL AND PROCEDURAL BACKGROUND
Mrs. Chauffepied died on March 30, 1999. She executed a will in January 1999, bequeathing the entirety of her estate to Arlene and Buford. The will was subsequently ordered probated, and Arlene was appointed executrix of the succession.
In May 1999, the decedent's brother, Lana Brouillette, and numerous other descendants filed a rule to annul the probated testament, vacate the order appointing Arlene as executrix, appoint an administrator, and invalidate bond. At the hearing on the rule, the trial court found the will invalid due to a revocation executed by Mrs. Chauffepied on March 23, 1999. Thus, the trial court vacated the orders probating the will and appointing Arlene executrix. Arlene and Buford timely filed this appeal.

ISSUES
On appeal, Arlene and Buford claim the trial court erred by finding that Mrs. Chauffepied was of sound mind and capacity at the time she executed the revocation on March 23, 1999; that the medical evidence supported the lay testimony of Mrs. Chauffepied's mental capacity at the time of the revocation; and in giving greater weight to lay testimony than to the expert medical testimony of Mrs. Chauffepied's treating physicians, including her treating psychiatrist.

DISCUSSION
Arlene and Buford urge that the revocation was invalid for lack of testamentary capacity. Whether a person has capacity at the time of revocation is an issue of fact. Thus, the findings of the trial court should not be disturbed on appeal in the absence of manifest error. Succession of Duboin, 94-446 (La.App. 3 Cir. 11/2/94); 649 So.2d 617. "Capacity to donate mortis causa must exist at the time the testator executes the testament." La. Civ.Code art. 1471. "To have capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making." La.Civ.Code art. 1477. There is a presumption in favor of testamentary capacity. Succession of Young, 96-1206 (La. App. 3 Cir. 3/5/97); 692 So.2d 1149. "A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos or executed the testament." La. Civ.Code art. 1482. Thus, we must determine whether the trial court was manifestly erroneous in finding that Arlene and Buford failed to meet their burden in proving, by clear and convincing evidence, that Mrs. Chauffepied lacked testamentary capacity.
Clear and convincing evidence of lack of testamentary capacity requires "more than a preponderance of the evidence but less than beyond a reasonable doubt." Young, 692 So.2d at 1151. "The existence of the disputed fact must be highly probable, that is much more probable than its non-existence." Id. Arlene and Buford rely heavily on the testimony of three medical doctors whom had very limited contact with Mrs. Chauffepied. Dr. L.J. Mayeux, Coroner of Avoyelles Parish, testified that Mrs. Chauffepied was incapable of understanding the consequences of her actions. Dr. Mayeux evaluated Mrs. Chauffepied for purposes of involuntarily committing her to the psychiatric ward at Bunkie General Hospital during early March 1999. Following his evaluation, Mrs. Chauffepied was committed to the geriatric psychiatric unit from March 5, 1999 through March 19, 1999. While there she was treated by Dr. Henry Hines and Dr. Frank Covington, who were both of the opinion that Mrs. Chauffepied was incapable of understanding the consequences of the revocation.
However, Arlene and Buford have not produced any evidence that Mrs. Chauffepied was incapable of understanding the *557 nature and consequences of her actions on the day she revoked her will. In its well written reasons for judgment, the trial court quoted Succession of Deshotels, 98-1467, p. 9 (La.App. 3 Cir. 5/12/99); 735 So.2d 826, 831, that quotes Succession of Braud, 94-668, p. 5 (La.App. 4 Cir. 11/17/94); 646 So.2d 1168, 1171, writ denied, 95-383 (La.3/30/95); 651 So.2d 841, which states:
The only witnesses present when the will was actually executed all testified unequivocally that [the testator] did have the necessary mental capacity to execute the will on the day the will was actually prepared. None of [the opponent's] evidence rebuts this testimony. The caselaw [sic] is clear that proof of the presence of a mentally-debilitating condition at the approximate time that the will was executed is insufficient to prove lack of testamentary capacity at the time the will was executed by clear and convincing evidence, especially in light of conflicting evidence of the decedent's capacity at the actual time the will was executed. Even the fact that the decedent had previously been interdicted was insufficient to prove lack of testamentary capacity in [Succession of Cole, 618 So.2d 554 (La.App. 4th Cir. 1993)].
Numerous witnesses testified that Mrs. Chauffepied understood the nature and consequences of her actions upon her release from the hospital and particularly on the day she executed the revocation.
Attorney David Lafargue, who was to prepare a new will for Mrs. Chauffepied, and who alerted her to the option of making a revocation of the former will until the new will could be completed, testified that Mrs. Chauffepied was competent at the time of her revocation. He stated at trial that Mrs. Chauffepied instructed him on various specific bequests to be placed in the new will, specifically naming each legatee and their relationship to her. Further, he instructed Mrs. Chauffepied as to the difference between a donation inter vivos and a donation mortis causa. Before leaving his office, Lafargue explained to Mrs. Chauffepied what a revocation was and asked if she wanted to execute one. Convinced that Mrs. Chauffepied understood the legal effects of revocation, Lafargue had Mrs. Chauffepied execute a handwritten, dated, and signed revocation. The revocation was notarized by Lafargue and witnessed by his two secretaries. Both secretaries testified that Mrs. Chauffepied appeared competent and that she even engaged in conversation with one of them about her petite stature and youth. Lafargue, an attorney and assistant district attorney for twenty years, further stated that he was certain from his many years of practical experience that Mrs. Chauffepied fully understood the concepts and terms that he explained to her.
After leaving the office, Mrs. Chauffepied conversed with a local store owner, Raymond Laborde, who testified that she referred to his wife by name and stated she was sad she was unable to attend the funeral of his mother who had passed away four or five years ago. Moreover, she inquired whether one of the store clerks still danced. Laborde testified that they talked about "all kinds of things" and that Mrs. Chauffepied never appeared to be confused.
Numerous other witnesses who saw Mrs. Chauffepied in the days after her release from the hospital, but prior to the revocation, testified that she was clear thinking, competent, and able to understand the consequences of her actions. Katie Dupuy assisted Mrs. Chauffepied after her release from the hospital on March 19th. She testified that Mrs. Chauffepied noticed that a small stuffed bird on a flower arrangement that had been thrown away while she was in the hospital was missing. Mrs. Chauffepied also requested that Dupuy's husband break the concrete outside to prevent the patio from flooding, which was successfully completed. Dupuy further testified that at all times Mrs. *558 Chauffepied seemed clear-thinking and competent.
Jacob Brouillette, who visited with his great aunt after her release from the hospital, testified that she inquired about his major in college. She also asked about his fiancé by name, after only meeting her twice several months before. Jacob said Mrs. Chauffepied did not appear confused and was clear-thinking.
Burt Brouillette testified that Mrs. Chauffepied immediately noticed upon her return home that four Irish potatoes were missing from a hanging basket in her kitchen. During another conversation concerning a warranty agreement, Mrs. Chauffepied knew the month and year she purchased her four-year-old clothes dryer. Burt further testified that Mrs. Chauffepied brought several dishes she had prepared herself to a barbecue dinner a few days after her release.
Gertie Dibble, who was employed by Mrs. Chauffepied as a sitter, testified that Mrs. Chauffepied carried on normal conversations concerning her health problems after her release from the hospital. Becky Laborde testified that she executed a power of attorney for Mrs. Chauffepied shortly before her release from the hospital and that Mrs. Chauffepied did not exhibit any signs of incompetence or confusion. At the time of her release, Mrs. Chauffepied was described in the medical records as alert, oriented, and free of delusions.
In the face of conflicting testimony in a succession proceeding, the trial court is in a better position to make credibility determinations by examining variations in demeanor and tone of voice and resolving conflicts in testimony. Young, 692 So.2d 1149. Furthermore, Arlene and Buford's argument that greater weight must be given to the testimony of medical experts is unfounded. The trial court has considerable discretion to accept or reject expert testimony, and it evaluates expert testimony using the same principles as apply to other witnesses. Oliver v. Oliver, 95-1026 (La.App. 3 Cir. 3/27/96); 671 So.2d 1081. Thus, we find no manifest error in the trial court's determination that the lay witnesses' testimony was more persuasive as to Mrs. Chauffepied's competence.
Therefore, for the reasons set forth above, we find that the trial court was not manifestly erroneous in finding that Arlene and Buford failed to prove, by clear and convincing evidence, that Mrs. Chauffepied lacked testamentary capacity at the time of execution of the revocation.

CONCLUSION
Arlene and Buford failed to meet their burden of proving by clear and convincing evidence that Mrs. Chauffepied was unable to understand the nature and consequence of her actions on the day she executed a revocation of her January 1999 will. Therefore, we find no manifest error in the judgment of the trial court vacating the order probating the former testament. All costs are to be paid by the defendants-appellants, Arlene Brouillette and Buford Dauzat.
AFFIRMED.