646 So.2d 1168 (1994)
SUCCESSION OF Norma Reil De Rouen BRAUD.
No. 94-CA-0668.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1994.
Rehearing Denied January 18, 1995.
Jerome P. Halford, Joseph M. Neilson, New Orleans, for appellants.
Ronald D. Bodenheimer, George S. Hesni, II, Leigh Ann Wall, Bodenheimer & Hesni, Gretna, for appellee.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
The issue in this appeal is the validity of an olographic will. Plaintiff Evangeline M. Vavrick, the executrix named by the decedent in a prior will, contends that the testator *1169 lacked sufficient testamentary capacity and/or was unduly influenced by defendant Thelma Bodenheimer, executrix in the will accepted for probate. Specifically, Ms. Vavrick contests a trial court judgment which admitted into probate an April 20, 1993 olographic will written by decedent Norma Reil DeRouen Braud and recalled and vacated a July 21, 1993 order probating a October 30, 1992 statutory will. We affirm.

Facts
Ms. Braud, who died on July 19, 1993, executed at least seven different wills during the last thirteen years of her life. The first four of those wills were dated March 25, 1980; April 17, 1980; September 13, 1991; and December 10, 1991. All four of those wills were prepared by Ms. Vavrick in statutory form; further, those four wills all contained similar provisions leaving particular legacies to Ms. Braud's two first cousins, Rita Wetta Adams and Mary Althea Wetta Talbot, and leaving all or most of the remainder of Ms. Braud's property to St. Henry's Catholic Church. Both the September 13, 1991 will and the December 10, 1991 will also left particular legacies to Marilyn Barbara Rose, while the September 13, 1991 will also left a particular legacy to Ms. Braud's cousin Daniel Schwartz.
On October 5, 1992, Ms. Braud executed an olographic will in which she left particular legacies to Barbara Rose, Daniel Schwartz Jr., "Martha," and "Linda," then left the balance of her estate to her "faithful and devoted companion," Ellie T. Hanners. About three weeks later, on October 30, 1992, Ms. Braud executed another statutory will, prepared by Ms. Vavrick, in which she left particular legacies to Rita Wetta Adams and Mary Althea Wetta Talbot; that will directed that 50 percent of the balance of the estate go to Thelma T. Bodenheimer, and that the remaining 50 percent be shared between Rita Wetta Adams, Mary Althea Wetta Talbot, Daniel Schwartz Jr., Marilyn Barbara Rose, and St. Henry's Catholic Church. The final will was an olographic will executed April 20, 1993, in which Ms. Braud left all her remaining property after the payment of just debts and funeral expenses to Thelma Bodenheimer; that will was witnessed by Marilyn Barbara Rose and Dominque Morgan.
After Ms. Braud's death, Ms. Vavrick, who was named co-executrix along with Ms. Bodenheimer in the October 30, 1992 statutory will, had the October 30, 1992 will probated. Additionally, Ms. Vavrick filed a rule to show cause why Ms. Bodenheimer should not be disqualified as co-executrix for breach of fiduciary duty and requested an accounting from Ms. Bodenheimer. Meanwhile, Ms. Bodenheimer filed a petition to probate the April 20, 1993 olographic will. Ms. Bodenheimer also filed a rule to show cause why Ms. Vavrick should not be recused and for a stay order. The trial judge rendered judgment probating the April 20, 1993 olographic will and recalling the order probating the October 30, 1992 statutory will. Ms. Vavrick appeals that judgment.
In his reasons for judgment, the trial judge stated as follows:
Whether justified or not, Mrs. Braud became fearful that Mrs. Vavrick and her cousins desired to place her in a nursing home. She became thoroughly disaffected with them, and rewrote her will removing them as executor and legatees.
The vast preponderance of the evidence compels the conclusion that she did not lack testamentary capacity. Indeed she was anxious and depressed. After all, she knew she was suffering from terminal cancer. But even the opponents' expert, Dr. Pardue, found her oriented, and not grossly confused on September 30, 1992. She testified that people suffering from dementia typically have good days and bad. I do not believe that depression can be equated with a lack of testamentary capacity.
I conclude that there existed between decedent and Dolly Bodenheimer a relationship of confidence within the meaning of C.C.P. Art. 1483. Imposing on the opponents only the burden of proving undue influence by a simple preponderance, their case fails. Again the evidence compels the conclusion that decedent was not susceptible to undue influence. Very much to the contrary, she kept a close watch over her affairs and the decision concerning her *1170 property were entirely hers. I was particularly impressed by the testimony of Barbara Rose.
In her brief filed in this court, Ms. Vavrick lists 19 entries in her "Syllabus," sets out 18 "Specifications of Error," and poses 10 questions in her "Issues Presented" section. However, none of the issues are formally briefed; instead, Ms. Vavrick relies on a lengthy "Statement of the Case" and a short "Argument" section, which makes no citations to statutory or jurisprudential law. Ms. Vavrick admits, however, that the "principle issue" to be decided by this court is whether Ms. Braud "possessed mental capacity on April 20, 1993," when the last olographic will, probated by the trial court judge, was executed. She also contests the trial judge's conclusion that Ms. Braud was not susceptible to undue influence. Thus, we will consider these two issues.

Testamentary capacity
Ms. Vavrick's argument that the trial court incorrectly found that Ms. Braud possessed testamentary capacity to execute a will on April 20, 1993 is based primarily on medical evidence that Ms. Braud had been diagnosed with several mental illnesses prior to that date and the allegation that Ms. Braud was taking opiate drugs for pain, as well as mood and mind altering drugs for her physical infirmities and mental weakness. Ms. Vavrick claims that the trial judge incorrectly "rejected" the competent medical evidence presented by her expert psychiatrist, Dr. Joyce Ann Pardue. Ms. Vavrick also claims that the trial judge applied the wrong standard of proof on this issue.
We find no merit in any of Ms. Vavrick's arguments on this issue. La.C.C.P. art. 1477, relative to the effect of the mental condition of the donor on his capacity to donate, states as follows: "To have capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making." Further, under the provisions of La.C.C.P. art. 1471, the "[c]apacity to donate mortis causa must exist at the time the testator executes the testament." Further, the existence of testamentary capacity is presumed; thus, the party attacking the will has the burden of proving lack of testamentary capacity by clear and convincing evidence. Succession of Dowling, 633 So.2d 846 (La.App. 4th Cir. 1994); Succession of Cole, 618 So.2d 554 (La.App. 4th Cir.1993); Succession of Russo, 596 So.2d 365, 366 (La.App. 4th Cir.1992); Succession of Mack, 535 So.2d 461 (La.App. 4th Cir.1988). Thus, as in the Russo case, the "narrow issue" before this court is whether the trial court was manifestly erroneous or clearly wrong in finding that Ms. Vavrick failed to meet her burden of proving that Ms. Braud lacked testamentary capacity by clear and convincing evidence.
We find that the trial court's conclusion was not manifestly erroneous. All of the witnesses present at the time that Ms. Braud executed the olographic will on April 20, 1993 testified that Ms. Braud initiated the writing of the will on her own, that Ms. Braud wrote the will in her own hand, and that Ms. Braud's contemporaneous statements indicated that she knew exactly what she was doing at the time she wrote the will. The trial judge obviously found the testimony of these witnesses credible; a finding which can virtually never be manifestly erroneous in the absence of objective evidence to the contrary. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The trial judge indicated that he was especially impressed with the testimony of Barbara Rose, who had been a legatee under several of Ms. Braud's previous wills and who thus testified against her own pecuniary interest in favor of the olographic will.
In order to overcome this evidence of testamentary capacity, coupled with the legal presumption in favor of testamentary capacity, Ms. Vavrick was required to present clear and convincing proof that Ms. Braud did not have testamentary capacity at the time she executed the will. In order to prove a matter by clear and convincing evidence, the party must "demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." Succession of Cole, 618 So.2d 554 (La.App. 4th Cir.1993).
In an effort to meet this difficult burden of proof, Ms. Vavrick presented medical records *1171 plus the testimony of Dr. Pardue. Dr. Pardue saw Ms. Braud on September 1, 1992; September 30, 1992; October 20, 1992; and November 17, 1992. Dr. Pardue testified to her opinion that Ms. Braud suffered from depression, confusion, forgetfulness, and organic brain syndrome (dementia). Further, Dr. Pardue testified that Ms. Braud was taking antidepressants, anti-anxiety drugs, tranquilizers, hypnotic drugs, and pain medication. Dr. Pardue testified that she would have been "skeptical" of any legal documents which Ms. Braud might have executed when she first saw her. However, she also testified that the symptoms of dementia almost always fluctuate "early on" and perhaps for years. Further, Ms. Braud was allowed to sign her own medical consent forms during the period of time she was under Dr. Pardue's care. The last time Dr. Pardue saw Ms. Braud, on November 17, 1992, the only mental problem noted in her report was depression.
Ms. Vavrick also admitted into evidence various hospital records showing that Ms. Braud had been diagnosed to suffer from anxiety, depression, dementia, organic brain involvement, brain atrophy, and metastatic brain disease.
However, under the applicable legal principles, Ms. Vavrick's evidence is insufficient to meet her burden of proving lack of testamentary capacity with clear and convincing evidence, principally because it "does not contain anything to establish mental incompetency when the decedent executed her will." Mack, 535 So.2d at 463. The only witnesses present when the will was actually executed all testified unequivocally that Ms. Braud did have the necessary mental capacity to execute the will on the day the will was actually prepared. None of Ms. Vavrick's evidence rebuts this testimony. The caselaw is clear that proof of the presence of a mentally-debilitating condition at the approximate time that the will was executed is insufficient to prove lack of testamentary capacity at the time the will was executed by clear and convincing evidence, especially in light of conflicting evidence of the decedent's capacity at the actual time the will was executed. Even the fact that the decedent had previously been interdicted was insufficient to prove lack of testamentary capacity in Cole, 618 So.2d 554. Thus, we find that the trial judge was not manifestly erroneous in concluding that Ms. Vavrick failed to meet her burden of proving lack of testamentary capacity by clear and convincing evidence.

Undue influence
Alternately, Ms. Vavrick claims that the April 20, 1993 olographic will is invalid because Ms. Bodenheimer, the sole legatee in the will, exercised undue influence over Ms. Braud during the last few months of her life. Specifically, Ms. Vavrick claims that the evidence proves that Ms. Bodenheimer exercised psychological force and fear over Ms. Braud because Ms. Braud was totally dependent on Ms. Bodenheimer during the last months of her life since Ms. Bodenheimer acted as Ms. Braud's "principal health care coordinator." Further, Ms. Vavrick claims that the evidence shows that Ms. Braud was "stripped of her own volition" by her successive "principal sitters." Ms. Vavrick also claims that financial records impeached Ms. Bodenheimer's testimony that Ms. Braud handled her own financial affairs during the period in question, contending that Ms. Bodenheimer's testimony was "extremely implausible and internally inconsistent." Ms. Vavrick claims also that the trial judge applied an incorrect standard of proof on this issue.
La.C.C. art. 1479, relative to the nullity of a donation procured by undue influence, provides as follows:
A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.
Relative to the burden of proof in a case challenging a donation on the basis of fraud, duress, or undue influence, La.C.C.P. art. 1483 provides as follows:
A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. *1172 However, if, at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.
In the instant case, the trial judge stated in his reasons for judgment that Ms. Vavrick had the burden of proving the existence of undue influence only by a preponderance of the evidence. We find no error in that conclusion, since the record is clear that Ms. Bodenheimer and Ms. Braud had a relationship of confidence at the time the April 20, 1993 olographic will was executed, and that Ms. Bodenheimer was not related to Ms. Braud by affinity, consanguinity or adoption. Thus, the proper burden of proof on this issue is by preponderance of the evidence.
The trial judge specifically concluded that Ms. Vavrick failed to prove even by a preponderance of the evidence that Ms. Bodenheimer exercised undue influence over Ms. Braud which "so impaired the volition of [Ms. Braud] as to substitute the volition of [Ms. Bodenheimer] for the volition of [Ms. Braud]." La.C.C.P. art. 1479. The trial judge found specifically that Ms. Braud "was not susceptible to undue influence" and that she "kept a close watch over her affairs and the decisions concerning her property were entirely hers." The narrow question for this court to decide is whether the trial judge was manifestly erroneous in reaching that conclusion.
After a close review of the record, we again find that the trial court's conclusion was not manifestly erroneous. Ms. Vavrick's major arguments on this issue revolve around the fact that Ms. Braud's wills had contained similar provisions for many years, prior to the time she came under the influence of two successive "principal sitters," Ellie Hanners and Ms. Bodenheimer. Ms. Vavrick points to the fact that Ms. Braud's first will differing greatly from her previously-expressed wishes to leave her property to her cousins and her church was confected while Ms. Hanners was her sitter; that will, which was olographic, left the bulk of Ms. Braud's estate to Ms. Hanners. Then, Ms. Vavrick points out that Ms. Braud executed another olographic will, again contrary to her prior expressed wishes, while Ms. Bodenheimer was handling her financial affairs; that will left the bulk of Ms. Braud's estate to Ms. Bodenheimer.
From these facts, Ms. Vavrick would have this court apply a kind of presumption that Ms. Braud was susceptible to undue influence from her sitters when the more direct evidence indicates that Ms. Braud simply changed her mind. As the trial judge stated, the evidence indicates that Ms. Braud came to believe that her cousins, who had traditionally been her legatees, were more interested in her money than in her well-being. Further, the evidence indicates that Ms. Braud became convinced that Ms. Vavrick and her cousins were conspiring to place her in a nursing home, a destination which she greatly feared.
Ms. Vavrick also points to the fact that Ms. Braud had traditionally intended to leave the bulk of her estate to the Catholic Church. However, the record also contains evidence that Ms. Braud changed her mind about the Catholic Church because of the many reports of homosexuality and pedophilia among priests. Further, there is no evidence that Ms. Hanners or Ms. Bodenheimer planted the ideas which resulted in Ms. Braud's change of heart concerning the disposition of her property following her death. This evidence was not contradicted and was obviously believed by the trial judge. Since the trial judge's conclusions on these issues was based on a credibility call between the two groups of witnesses, we cannot find that his conclusions were manifestly erroneous, since there is no objective contradictory evidence. Rosell, 549 So.2d at 844.
Ms. Vavrick also claims that Hibernia bank records prove that Ms. Bodenheimer exercised undue influence over Ms. Braud. It is true that Ms. Bodenheimer wrote numerous checks on Ms. Braud's account during the last months of her life; it is also true that Ms. Bodenheimer had access to Ms. Braud's *1173 certificates of deposit and bank safety deposit box, and that Ms. Bodenheimer removed large sums of money from those sources during the last months of Ms. Braud's life. However, Ms. Bodenheimer admitted that she took all of the actions Ms. Vavrick cites, including writing checks to herself. Ms. Bodenheimer claims, however, that all the financial transactions were performed at Ms. Braud's direction, a claim which was corroborated by the testimony of Ms. Braud's sitters who testified at trial. Once again, the trial judge, who had the advantage of seeing the witnesses, chose to credit the testimony of Ms. Bodenheimer's witnesses over the testimony of Ms. Vavrick's witnesses. We cannot say that his decision was manifestly erroneous.
Comment (b) to La.C.C.P. art. 1479, which addresses the determination of whether specific acts may be considered to constitute undue influence, states as follows:
Mere advice, or persuasion, or kindness and assistance, should not constitute influence that would destroy the free agency of the donor and substitute someone else's volition for his own.
This comment indicates that the determination of undue influence is somewhat subjective. Cole, 618 So.2d at 557. Under the circumstances, we find no manifest error in the trial judge's conclusion that Ms. Vavrick failed to prove that Ms. Bodenheimer exercised such influence that Ms. Bodenheimer's volition was substituted for Ms. Braud's volition at the time the will was executed.

Conclusion
Accordingly, the trial court judgment probating the April 20, 1993 olographic will and recalling the July 21, 1993 order probating a October 30, 1992 statutory will is affirmed. All costs are assessed against the appellant.
AFFIRMED.