CLARENCE E. MCMANUS, Judge. '
|2The appeal arises from the decision of the trial court granting Patrice Barattini’s petition to annul probated testament executed on November 9, 2006) and ordering that the testament of decedent William Barattini, executed in 1997, be probated. For the reasons that follow, we affirm the decision of the trial court.
FACTS AND PROCEDURAL HISTORY
William Barattini died on July 13, 2010. At the time of his death, he had been married once, to Marilyn Charvannes Bar-attini (who predeceased him). One daughter was born as a result of that union, Patrice Barattini. Decedent had also been *1093 involved in a long term relationship, lasting until his death, with June Clesi. Of that relationship one son was born, Michael Barattini.
On August 5, 2010, Michael Barattini filed a Petition for Probate of Statutory Testament, seeking to probate a testament signed on November 9, 2006. In the will, the decedent left his entire estate to his son, Michael, and nothing to his daughter, Patrice Barattini. The trial court signed judgment probating the will on August 10, 2010.
On August 18, 2010, Patrice filed a Petition to Probate Notarial Testament and Opposition to Probating Previously Filed Testament, in which she opposed Michael Barattini’s petition for probate of the November 9, 2006 testament, and in which she petitioned to probate the decedent’s will executed April 24, 1997. In the R1997 testament, the decedent forgave Michael debts owed, and left his estate to Patrice Barattini. Upon discovering that a judgment probating the 2006 will had already been rendered, on October 4, 2010, Patrice filed a supplemental petition in which she sought to annul the judgment probating the 2006 testament, contending that the testament was an absolute nullity.
A trial on the merits was held and the trial' court found that William Barattini lacked the capacity to execute a last will and testament on November 9, 2006. The trial court vacated its ruling of August 10, 2010 (which had probated that testament), and ordered that the Last Will and Testament of William L. Barattini dated April 24, 1997, be filed, registered and executed according to law.
After the denial of his motion for new trial, Michael Barattini filed this appeal. In this appeal, Michael Barattini. alleges that the trial court erred in finding that plaintiff met her burden of proof with clear and convincing evidence. He further contends that the trial court erred in not applying the jurisprudential presumption of an “uncalled witnesse” against the plaintiff.
The following evidence was adduced at the hearing.
The decedent lived with June Clesi, mother of Michael, the last 15 years of his life, including all of 2006 and up until the time he died in 2012. In 2005, the decedent was diagnosed with Alzheimer’s disease. According to Clesi, during the fall of 2006, the decedent was still in good physical and mental condition, and his condition did not deteriorate until 2008. Her testimony that the decedent was in good physical condition was contradicted by the medical records of East Jefferson Hospital, where he had been admitted on more than one occasion during that year.
Decedent was checked into the hospital by June Clesi on October 30, 2006,10 days before the will in question was executed. The medical records indicated that he was obtunded and in an almost comatose condition. He returned home |4from the hospital at 8:30 on the evening of November 9, 2006, the day the will was signed. He was transported home by. ambulance and his medical discharge papers state his condition as encephalopathy (delirium). They also noted that he had been diagnosed with Alzheimer’s disease.
Clesi testified that on November 9th, the decedent told her he wanted to change his will, and he called the notary himself. According to Clesi, the decedent was upset with his daughter Patrice because she had sold property in Bush, Louisiana several years earlier. When the will was executed, Clesi’s two daughters, who considered decedent akin, to a step-father, acted as witnesses. In addition to the notary, Lyn Fruchnicht, Michael Barattini was also present. Clesi testified that decedent’s *1094 mental capabilities were good and that she saw decedent sign the will himself with a pen. She stated that the notary arrived at around 7:00 p.m. Clesi did not remember that decedent was brought home in an ambulance around 8:30 that night.
Lyn Fruchnicht was the notary who executed the will. She stated that she prepared the will at the decedent’s request, who had contacted her by telephone. Fru-chnicht stated that on either November 8 or November 9, William Barattini contacted her in order to have the will signed. She stated that she went to the house around 7 p.m. that evening. Clesi, her two daughters and Michael Barattini were there. At the time Fruchnicht arrived, the decedent was lying in bed; however he got up and sat on the side of the bed to sign the will. She further testified that she did not know he had been diagnosed with Alzheimer’s about 1 and ½ years earlier, and that she believed he had the mental capacity to make the will. She too did not remember him arriving at the house by ambulance at around 8:30. On cross-examination, Fruchnicht admitted to a guilty plea in a federal HUD fraud charge.
|sNicole Lawler, Clesi’s daughter, testified that she witnessed the signing of the will, which occurred around 8 p.m. She testified that from October 25th to November 9th, decedent was in good health. She observed this when she visited the decedent, at Clesi’s house during that time period.
Michael Barattini, Clesi’s and decedents’ son and the beneficiary of the will at issue, testified that the decedent called him to come over because he was making a new will. He testified that the decedent signed the will around 7 or 8 p.m., and that when he signed the will he was ambulatory. Michael Barattini did not remember that his mother had brought decedent to the hospital 10 days earlier in a lethargic condition, nor did he remember decedent being brought home in an ambulance at 8:30 on the night the will was signed.
Sandra Gomez was decedent’s caretaker in 2007, sometime after the will was signed. She testified that when she sat with the decedent, he recognized her, he ate by himself, and he was forgetful, but not overly so. She stated that he read the newspaper and would discuss current events with her, and that he had not lost interest in the real estate business.
Mary Ann Sherry, a board certified document examiner, examined decedent’s current will, his previous wills and some East Jefferson Hospital releases he signed earlier in 2006. In her opinion, the signature on the November 9, 2006 will was not the same as the other signatures, known to be William Barattini’s signatures, which she examined.
Patrice Barattini testified that her relationship with her father had not changed after she had sold the piece of property several years earlier. According to both her testimony and hospital records, Patrice Barattini was the person involved with hospital personnel concerning her father’s care in treating his Alzheimer’s disease.
IfiAlso at the trial, testimony was elicited that Patrice Barattini obtained the decedent’s power of attorney after the date the will in question was written. Patrice Bar-attini admitted that Clesi signed the power of attorney in decedent’s name, and that she witnessed it. Her objective was to protect her father’s house (which had been damaged by Katrina) and his entitlement to Road Home money.
Dr. Ted Bloch was qualified as an expert in geriatric psychiatry. He testified that he reviewed the records of decedent’s Alzheimer’s diagnosis and the records of East Jefferson Hospital relative to decedent, including those of his ten day stay at *1095 the time of the writing of the will. He opined that decedent would not have had the capacity to execute a will on November 9. The records indicated that he was discharged on November 9th with a diagnosis of encephalopathy, which means he was almost comatose, and in a delirious condition. The decedent had a history of Alzheimer’s and possible Parkinson’s; however a neurological assessment could not be done at that time because of stupor. His hospital records contained notations that he was disoriented throughout his hospital stay, that he had delirium on top of dementia, and that he was forgetful. Dr. Blont testified that decedent had an abnormal EEG, which is consistent with patients that had Alzheimer’s disease and delirium. Dr. Blont further testified that Alzheimer’s disease is a progressive disease that does not get better, and that dementia causes someone to lose their capacity to make rational decisions, which he classified as executive function. When asked whether he was 100% certain, based on the information gleaned from decedent’s medical records and discharge papers, that William Barattini could not have had the capacity to execute a will on November 9, 2006, Dr. Bloch replied, “I am.”
^CAPACITY AND BURDEN OF PROOF
Capacity to donate mortis causa must exist at the time the testator executes the testament. LSA-C.C. art. 1471. To have capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making. LSA-C.C. art. 1477. In determining testamentary capacity, the question is whether the testator understood the nature of the disposition and appreciated its effects. In re Succession of Hollis, 43,315 (La.App. 2 Cir. 6/18/08), 987 So.2d 387, writ denied, 08-1632 (La.10/24/08), 992 So.2d 1035.
“A party is presumed to have testamentary capacity, and the opponent bears the burden of defeating this presumption by putting forth clear and convincing evidence to the contrary.” In re Succession of Sandifer, 05-860 (La.App. 3 Cir. 3/1/06), 923 So.2d 862. In order to prove a matter by clear and convincing evidence, the party must demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. In re Succession of Hollis, supra.
The issue of capacity is factual in nature[J In re Succession of Furlow, 44,-473 (La.App. 2 Cir. 8/12/09), 17 So.3d 475. The court may consider medical evidence, other expert testimony and lay witness testimony. As such, there is no “litmus paper” test to apply in the evaluation of mental capacity. Id.
Because “[t]he determination of testamentary capacity is a factual question, the findings of the trial judge are not to be disturbed on appeal unless manifestly erroneous.” Succession of Wiggins, 08-63 (La.App. 3 Cir. 6/4/08), 984 So.2d 948, unit denied 08-1355 (La.9/26/08), 992 So.2d 989. Issues of credibility are within the domain of the trier of fact. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of preview demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Dufresne v. Dufresne, 08-215 (La.App. 5 Cir. 9/16/08), 992 So.2d 579.
In this ease, the witnesses to the will testified that decedent had capacity to execute the will at the time it was signed. *1096 They stated that he was in good physical condition and that he knew what he was doing. However, medical records of East Jefferson Hospital on that same day indicated that the decedent was delirious and almost comatose. An expert in geriatric psychiatry testified that given the medical condition of decedent as evidenced by medical records of that date on which the will was allegedly executed, the decedent would not have had capacity to execute a will.
Based on the evidence presented, we cannot find manifest error in the findings of the trial court. While it is true that every witness that was present at the execution of the will testified to decedent’s capacity, it is apparent that the trial court found their testimonies not to be credible. While each witness stated that the decedent was alert and aware, each witness also stated that they did not recall the decedent being transported from the hospital, after a 10 day stay, in a delirious and almost comatose condition and approximately 1 hour after they stated that the will had been signed. Accordingly, we see no reason to disturb the trial court’s finding that the decedent did not have the capacity to execute the will of November 9, 2006, and in finding that will to be null. “UNCALLED WITNESS” RULE
In this allegation of error, Michael Barattini alleges that Patrice Barattini failed to call the decedent’s treating physician, and therefore he is entitled to the presumption that his testimony would be adverse to the plaintiffs case.
|3In Nunnery v. City of Kenner, 08-1298 (La.App. 5 Cir. 5/12/09), 17 So.3d 411, we said:
An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebutta-ble and is tempered by the fact that a party need only put on enough evidence to prove the case. Driscoll v. Stucker, 04-0589 (La.1/19/05), 893 So.2d 32, 47. The adverse presumption is referred to as the “uncalled witness” rule and applies when a party has the power to produce witnesses who would elucidate the transaction or occurrence and fails to call those witnesses. Id.
The adverse presumption is inapplicable when the witness is equally available to both parties. Dixon v. Travelers Ins. Co., 02-1364 (La.App. 4 Cir. 4/2/03), 842 So.2d 478, writ denied, 03-1482 (La.9/26/03), 854 So.2d 366.
In this case, Michael Barattini alleges that the decedent’s treating physician was known to Patrice Barattini and that her failure to call this physician should result in the adverse presumption that he would have testified that the decedent had capacity on November 9, 2006. However, the treating physician was equally available to Michael Barattini, and therefore the “uncalled witness” rule is inapplicable. We find this allegation of error to be without merit.
For the above discussed reasons, the trial court’s ruling of November 3, 2010, which vacated the Order of August 10, 2010 (probating the will of November 9, 2006) and ordered the Last Will and Testament of William L. Barattini, dated April 24, 1997, be filed, registered and executed according to law, is affirmed. All costs are assessed to appellant.

AFFIRMED