MAX N. TOBIAS, JR., Judge.
_JjThe appellant, Henry Holzenthal (“Henry”), appeals the trial court’s granting of summary judgment in favor of the appellee, Diarme Lumetta (“Dianne”), finding that Henry failed to produce clear and convincing evidence that the decedent, Donald Holzenthal (“Donald”), lacked testamentary capacity at the time he executed his last will and testament naming Dianne as his sole heir. Finding no error in the trial court’s judgment, we affirm.

Facts and Procedural Background

This matter arises out of a Petition to Annul Probated Testament filed by Henry regarding a testament executed by his late brother, Donald, on 3 November 2009. Donald executed his last will and testament in notarial form (La. C.C. art. 1576, et seq.), which was prepared and notarized by his long-time attorney, Bruce Miller (“Miller”), bequeathing his entire estate to his “good friend Diane B. Lumetta,” and naming her as his independent testamentary executrix.
Donald first approached Miller concerning the drafting of his last will on 2 November 2009, when he arrived at Miller’s office for purposes of completing an act of donation.[1] Having some concern for his own state of health, Donald |2expressed to Miller that he was desirous of getting his affairs in order.[2] At that time, Miller and Donald discussed at length how Donald wanted to dispose of his property. Miller testified by deposition that, during their discussion of various options, he explained to Donald that normally a person leaves his effects and assets to the objects of one’s natural bounty, ie., one’s relatives. Knowing by history that Donald had an estranged brother and several nieces and nephews, Miller testified that he found it a little strange that when discussing the objects of his natural bounty, Donald did not seem to recall the specific names of his relatives. Despite his lapse in recalling specific relative’s names, Miller stated that Donald knew “exactly what he was doing.” After discussing the matter more fully, *84 they decided that Donald should further consider how he wanted to dispose of his property overnight and would return to Miller’s office the following day at which time Miller would finalize the document pursuant to Donald’s wishes.
Donald returned to Miller’s office on the morning of 3 November 2009 to finalize his last will, as well as sign a procuration and a living will. Donald was accompanied by Dianne, his close friend and dance partner of several years. When finalizing the last will, Donald indicated to Miller his desire to leave his entire estate to Dianne rather than to his relatives specifically explaining that he had been estranged from his brother and family since the death of his mother several years prior and felt antipathy towards them.[3] When Miller asked if he wanted to leave |3any of his assets to charity, Donald explicitly indicated that he did not, but rather, desired to leave all of his property to Dianne. Though Miller did not direct specific questions to Donald concerning his mental capacity, having known him for over ten years and after having discussed with Donald the nature and effects of his decision, Miller was satisfied that Donald possessed the requisite testamentary capacity to make his last will and testament on that morning of 8 November 2009. Accordingly, Miller finalized the document and had Donald execute it in the presence of himself and two competent witnesses, Rebecca Mcllwain and Carrie Street, both administrative personnel in Miller’s office.[4]
After executing the will and leaving Miller’s office, Donald, accompanied by Dianne, went to the office of Dr. David Silver for a scheduled appointment with complaints of blood in his stool, chest pain, and indigestion. According to Donald’s medical record, no notation, reference, or other indication exists that Donald was disoriented, incoherent, or otherwise mentally compromised. During that appointment, arrangements were made for Donald to undergo a colonoscopy the following month in December. Later, on that same afternoon of 3 November 2009 after returning to his home, Donald became nauseous and called Dianne requesting that she take him to the emergency room. From there, Donald was admitted to the hospital and scheduled for a medical procedure to take place the next day. On 4 November 2009, Donald underwent an upper endoscopy at which time esophageal cancer was found. Due to a complication that arose during the |4procedure, Donald was rendered unconscious and never fully recovered. Donald died on 28 November 2009.
On 8 December 2009, Dianne opened succession proceedings. The last will and testament executed by Donald on 3 November 2009 was ordered probated and letters testamentary were issued. Thereafter, Henry filed a petition challenging Donald’s 3 November 2009 testament on the following grounds of: (1) lack of authenticity, (2) lack of testamentary capaci *85 ty, (3) undue influence, and (4) fraud/duress. In response, Dianne, individually, and as the independent executrix, filed an answer on 27 April 2010. Discovery thereafter commenced.
Dianne propounded the first set of discovery requests upon Henry in June 2010. When complete answers were not forthcoming, in October 2010, Dianne filed a motion to compel seeking to have the court require Henry to submit more adequate responses. Thereafter, the parties entered into a consent judgment dated 18 November 2010, wherein the parties agreed that Henry’s failure to substantively respond to a particular discovery request would be tantamount to an admission by Henry that he had no evidence responsive to that request. The consent judgment ordered that Henry provide substantive responses to Dianne by 30 November 2010, which Henry failed to do. One of the interrogatories Dianne propounded to Henry specifically requested the identity of any medical expert Henry expected to call at trial to support his claims.
In response to Henry’s failure to comply with the terms of the consent judgment by substantively responding to discovery, and the failure resulting in an admission that he had no evidence responsive to the specific discovery requests, including medical experts, on 15 December 2010, Dianne filed a motion to dismiss, or alternatively, motion for summary judgment, on the grounds that Henry slacked sufficient evidence to create a genuine issue of material fact as to any of the allegations contained his petition, including his allegations regarding Donald’s testamentary capacity. Thereafter, in an effort to allow Henry additional leeway to develop evidence to support his claims, the trial court continued Dianne’s motion without date on 20 January 2011. The trial judge also issued a pre-trial discovery scheduling order setting deadlines for the identification of witnesses and the completion of discovery that was agreed to by both parties. According to the scheduling order, Henry was to identify his witnesses by 18 February 2011, and Dianne was to identify her witnesses by 18 March 2011. The deadline for the completion of all discovery was set for 20 May 2011.
The record reflects that Henry missed his 18 February 2011 witness disclosure deadline, while Dianne timely filed her preliminary witness and exhibit list into the record on 18 March 2011. The record further reflects that on 24 March 2011, by letter directed to Dianne’s counsel, Henry submitted a preliminary list of witnesses. While Henry’s preliminary list of witnesses contained the name of one of Donald’s attending physicians, Dr. Silver, in addition to any person who may have attended to Donald at Canon Hospice, Henry’s list did not disclose the name of any medical expert expected to testify as to Donald’s testamentary capacity.
In April 2011, the depositions of Dianne, Henry, and Henry’s wife, Rita Holzenthal (“Rita”), were taken.[5] Thereafter, in accordance with the terms of the pre-trial discovery scheduling order, discovery was closed on 20 May 2011. At no time prior to the discovery cut-off date did Henry identify any expert witness that he might call at trial or submit written discovery requests to Dianne.
|fiOn 15 June 2011, Dianne filed a second motion for summary judgment seeking to have Henry’s petition to annul the probat *86 ed testament dismissed on the basis that Henry failed to produce “competent evidence sufficient to create a genuine issue of material fact with regard to any of the causes of action at issue.”[6] In response, Henry filed an opposing memorandum conceding he was only pursuing his claim that his brother lacked testamentary capacity, and agreeing to the dismissal of his claims for lack of authenticity, undue influence, and fraud/duress. A hearing on the motion was scheduled for 27 October 2011.
Approximately six weeks prior to the hearing on the motion for summary judgment, Henry retained new counsel to represent him. Sixteen days prior to the scheduled hearing, Henry’s new counsel filed a motion to continue, which the trial court denied.[7] On 19 October 2011, eight days prior to the hearing, counsel for Henry filed an opposition to Dianne’s motion, attaching the affidavits of B. Ann Cook (“Cook”), an attorney specializing in estate planning and successions, and Harold Ginzburg, M.D., a physician and psychiatrist.[8]
Dianne’s motion for summary judgment came for hearing on 27 October 2011. Having previously conceded that summary judgment was proper as to Henry’s claims for lack of authenticity, undue influence, and fraud/duress, the sole |7issue before the court was whether there remained any genuine issue of material fact as to Donald’s testamentary capacity at the time he executed his will on 3 November 2009. The trial judge refused to consider the affidavits of Henry’s proposed expert witnesses, Cook and Dr. Ginzburg, submitted by Henry in support of his opposition to Dianne’s motion on the grounds that the disclosure of these witnesses was untimely “pursuant to the Discovery Schedule executed on January .20, 2011 which provided discovery cutoff deadline of May 20, 2011.” The trial judge, having determined that the “totality of the evidence offered, including [Donald’s] medical records, demonstrated that [Donald] comprehended the general nature and consequences of the dispositions made as well as the status of his health,” granted Dianne’s motion for summary judgment finding no genuine issue of material fact existed concerning Donald’s testamentary capacity.
Henry timely filed the instant appeal.

Assignments of Error

Henry contends the trial court erred as follows: (1) in failing to conduct a hearing and/or grant Henry’s motion for leave to extend the deadline for identifying his witnesses, experts, and exhibits, and refusing to consider the affidavits of his proposed expert witnesses, Cook and Dr. Ginzburg; and (2) in determining that no genuine issue of material fact existed as to Donald’s testamentary capacity at the time he executed his will. For the following reasons, we find no abuse in the trial court’s discretion in refusing to allow additional *87 discovery or to consider the affidavits submitted by Henry, and no error in its determination that summary judgment was proper and no genuine of material fact existed.
| ¡¡Standard of Review
We review a trial court’s evidentia-ry rulings for abuse of discretion; a trial court’s ruling will not be disturbed unless it is clearly erroneous. Brandt v. Engle, 00-3416, p. 10 (La.6/29/01), 791 So.2d 614, 620-21. Similarly, a trial court has broad discretion in handling pre-trial discovery matters and an appellate court should not upset such a ruling absent an abuse of that discretion. King v. Phelps Dunbar, 01-1735, p. 7 (La.App. 4 Cir. 4/2/03), 844 So.2d 1012, 1017. Additionally, an appellate court reviews a summary judgment de novo while applying the same criteria applied by the trial court to determine whether summary judgment is appropriate. Huber v. Liberty Mut. Ins. Co., 00-0679, p. 5 (La.App. 4 Cir. 2/7/01), 780 So.2d 551, 554.

Discussion

The first time Henry identified his two experts was five months after the close of discovery and only eight days before the scheduled hearing on the motion for summary judgment when Henry filed his opposition memorandum.
In essence, Henry argues that the failure to timely identify expert witnesses was due solely to the inaction and/or incompetence of his prior counsel who, Henry contends, did not keep him well informed. Therefore, Henry urges this court not to penalize him for his prior counsel’s inaction. The record, however, contains evidence of numerous pleadings signed by Henry, in addition to correspondence received by him during the course of this litigation, suggesting that he was aware (or should have been aware) of information regarding witnesses’ identity. Moreover, the record indicates that timely completing discovery has been an issue in this case from its inception and the trial court took several steps to accommodate Henry in order that he could develop his ease. We note that |9Pianne’s second, or re-urged, motion for summary judgment was filed on 15 June 2011, and the hearing on her motion was not scheduled until four months later. Yet, Henry waited until just eight days prior to the hearing to request an extension of a discovery deadline that had passed five months previously and to submit the affidavits of unidentified experts in the hope of defeating the motion for summary judgment.
It is within the province of the trial court to control the progress of discovery. Rhea v. Winn Dixie Market Place Store, 02-2181, p. 4 (La.App. 4 Cir. 6/4/03), 849 So.2d 759, 762. Moreover, in matters of discovery, such as whether a witness has been listed in a timely manner, a decision of the trial court should not be disturbed in the absence of an abuse of discretion. Duncan v. Bartholomew, 11-0855, p. 19 (La.App. 4 Cir. 3/14/12), 88 So.3d 698, 712. Specifically, where a pre trial order has not been complied with, as in the case at bar where Henry did not identify his expert witnesses prior to the close of discovery, it is within the trial court’s discretion to disallow witnesses, expert or not, from testifying. St. John Baptist Church of Phoenix v. Thomas, 08-0687, p. 10 (La.App. 4 Cir. 12/3/08), 1 So.3d 618, 625. Our review of the record con vinces us that Henry has failed to show an abuse of the trial court’s vast discretion. Accordingly, we conclude the trial judge was not clearly erroneous and did not abuse his discretion in refusing to consider the affidavits submitted by Henry in opposition to Dianne’s motion for summary *88 judgment. See La. C.C.P. arts. 1551 C and 1471 A(2).
Henry submits the trial court erred when it determined that no genuine issue of material fact exists as to Donald’s testamentary capacity at the time he executed his will. We disagree. Specifically, Henry avers that Donald was suffering from esophageal cancer (with difficulty swallowing) coupled with the deposition | lntestimony of Miller (e.g., that Donald did not know the names of his relatives on the day preceding the execution of his will) and Dianne (e.g., that Donald had not eaten in a couple of weeks) constitute sufficient evidence to create a genuine issue of material fact as to Donald’s testamentary capacity.
Capacity to make a valid donation mortis causa must exist at the time the testator executes the testament. La. C.C. art. 1471. To have capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making. La. C.C. art. 1477. The testamentary capacity to make a will is tested at the time the will is made. La. C.C. art. 1471. In determining testamentary capacity, the question is whether the testator understood the nature of the disposition and appreciated its effects. In re Succession of Barattini, 11-752 (La.App. 5 Cir. 3/27/12), 91 So.3d 1091, 1095. A presumption in favor of testamen tary capacity exists and the validity of a testament should be upheld whenever possible. Atkins v. Roberts, 561 So.2d 837, 840 (La.App. 2nd Cir.1990). The party alleging incapacity has the burden of proving the lack of capacity at the time the will was executed by clear and convincing evidence to the contrary. Succession of Braud, 94-0668, p. 5 (La.App. 4 Cir. 11/17/94), 646 So.2d 1168, 1170. To prove a matter by clear and convincing evidence, the party must demonstrate that the existence of a disputed fact is highly probable (that is, much more probable than its nonexistence). Id.
Comment (f) to La. C.C. art. 1477 provides, in part:
Cases involving challenges to capacity are fact-intensive. The courts will look both to objective and subjective indicia. Illness, old age, delusions, sedation, etc. may not establish lack of capacity but may be important evidentiary factors. If illness has impaired the donor’s |1Tmind and rendered him unable to understand, then that evidentiary fact will establish that he does not have donative capacity....
The courts will look to the medical evidence that is available, such as the medical records and the testimony of treating doctors, and to other expert testimony, and to the testimony of lay witnesses. Clearly, no quick litmus paper test exists to apply to the evaluation of mental capacity in all cases.
Thus, many sources of evidence are to be considered when evaluating a testator’s capacity. In the instant case, in addition to the deposition testimony of Henry, Rita, Miller, Dianne, and the two persons who witnessed Donald’s execution of the will, the record also contains Donald’s various medical records pertaining to the treatment he received both before and after the execution of his will.
The record contains a medical history form completed by Donald on 27 October 2009. At that time, Donald reported that he was not taking any medications. He also complained of chest pain and a change in bowel habits. He acknowledged a prior history of depression and anxiety, but noted that neither prior condition was then currently present. On that date, Donald *89 was scheduled for a gastroscopy[9] and prescribed a B-complex vitamin and a stool softener, but nothing else. The medical records for this date do not indicate any cognitive impairment or confusion whatsoever.
The medical records, which were prepared on 3 November 2009, also contain no indication that Donald was cognitively impaired or experiencing any type of confusion or disorientation. Additionally, the medical history taken by a nurse does not indicate that Donald was delirious, malnourished, dehydrated, or | ,2that he had not eaten in several weeks as testified to by Dianne. To the contrary, the medical records document Donald’s concern that his excessive consumption of chocolate may have caused the blood in his stool, which was the reason for his appointment with the physician. By all indications, Donald was completely cognizant and mentally acute up until 5 November 2009 when he presumably suffered a cerebrovascular event as a result of an alleged esophageal perforation occurring during the upper endoscopy procedure. We find it of particular interest that his physician noted in his records the following: “Mr. Holzenthal has always been a man who knew exactly what he wanted and wanted his intentions followed which we did.”
We find the fact that Donald had a massive cancerous growth in his esophagus, discovered on 4 November 2009, to be immaterial to a determination as to whether he possessed the requisite testamentary capacity at the time he executed his will. Clearly, Donald did not know that he had cancer at the time he executed his will and it was not a condition for which he was taking medication that would have altered or affected his mental faculties or testamentary capacity.
We further find the deposition testimony of Dianne regarding Donald’s alleged lack of nutrition for the “couple of weeks” prior to the execution of his will does not create a genuine issue of material fact regarding his testamentary capacity. The medical records specifically refute Dianne’s statement. Additionally, even if Henry was able to establish that Donald was having difficulty eating or swallowing for a couple of weeks, no evidence exist in the record substantiating that his eating habits were affecting his cognitive abilities.
Next, we find that Donald’s inability to recall the specific names of his relatives on 2 November 2009 does not create an issue of material fact concerning 113his testamentary capacity at the time he executed his will on the following day. Even though Donald did not remember his relatives’ specific names, he knew who his relations were and that they had been estranged for an extended period of time. Moreover, when one reviews the entirety of Miller’s deposition testimony and affidavit, and not just the excerpts referenced by Henry, it is evident that Miller, Donald’s longtime lawyer and a person who was well aware of Donald’s mental abilities, was legally satisfied that Donald generally comprehended the nature of what he was doing and why he was doing it when he executed his will leaving all of his estate to Dianne. According to Miller, Donald provided a reasonable explanation as to why he didn’t want to leave any of his possessions to his relatives. Donald had been estranged from Henry and had virtually no contact with his family since the death of their mother fifteen years earlier. Donald de *90 scribed an acrimonious relationship with his brother and other family members. This discordant relationship(s) was corroborated by Rita’s own deposition testimony.[10] Further, when Miller specifically asked him if he wanted to leave any of his assets to charity, Donald replied that he did not. Donald explicitly stated that he wanted to leave all of his property to Dianne. While Donald’s choice may have surprised Miller, his choice was nonetheless informed and lucid, evidencing the requisite capacity to execute a testament. Accordingly, Miller prepared the document according to Donald’s wishes and in accordance with the law, and had Donald execute it before him and two competent witnesses.
|14Our review of the record convinces us that Henry will unable to meet his difficult evidentiary burden to show that Donald lacked capacity at the time he executed his will. Accordingly, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. The act of donation consisted of a donation of Donald’s ownership interest in real property to his former step-daughter, Rhonda Rolfs.

. Donald shared with Miller that he was concerned because he had recently discovered blood in his stool and was scheduled to see a physician that same afternoon.

. The record evidence establishes that during the seven months prior to Donald’s death, and possibly even longer, Donald had not had any contact with, Henry, Rita Holzenthal (Henry's wife), his nieces and nephews, or any other of the witnesses identified by the appellant. The deposition testimony of both Henry and Rita Holzenthal verifies that there had been a significant falling out between the parties fifteen years earlier in 1994 following the death of Donald and Henry's mother, and that Henry and Rita Holzenthal had been estranged and not had any regular contact with Donald for many years prior to his death.

. Both witnesses testified by deposition that they did not notice anything unusual or out of the ordinary regarding Donald's demeanor or appearance. His speech was not abnormal and he did not appear to them to be experiencing any discomfort.

. The deposition of Donald’s attorney. Miller, and the depositions of the two witnesses to Donald’s will were taken on 12 May 2010.

. Also, Dianne filed a motion for sanctions. This motion was denied by the trial court and has not been appealed.

. No Motion for Leave of Court to Extend the Deadline for Plaintiff to Identify His Witnesses, Experts, and Exhibits is contained in the record on appeal; however, a rule to show cause referring to the motion and an opposition to the motion filed on behalf of Dianne is in the record.

.Henry contends that on the day he filed the opposition to Dianne's motion for summary judgment, he contemporaneously filed a motion for leave of court to extend the deadline for plaintiff to identify his witnesses, experts, and exhibits. The record on appeal does not contain Henry’s alleged motion for leave to permit additional discovery. At the hearing on Dianne's motion for summary judgment, the trial court addressed Henry’s motion, denying it on the grounds that the deadline for disclosure of experts had expired.

. A gastroscopy is a procedure whereby a flexible lighted instrument is passed through the mouth for examination of the esophagus, stomach pouch, and duodenum with possible biopsy, removal of any polyps, or cauterization.

. According to Rita, given her distrust of Donald as to how he was handling the mother’s succession property, for a period of two years she resorted to weekly digging through his trash, and/or paying the sanitation crew to dig through it for her, in order that she could review the discarded waste to ensure he was properly administering the succession. She admits that Donald was angry when he learned of Rita's action. There was also considerable discord and acrimony over the sale of a piece of family property.