| SUCCESSION OF LONEY LANDRY | * | NO. 2025-CA-0404 |
|---|---|---|
| | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

* * * * * * *

CONSOLIDATED WITH:

SUCCESSION OF LONEY LANDRY

CONSOLIDATED WITH:

NO. 2025-CA-0405

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-01186, DIVISION "D"
Honorable Monique E. Barial, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Karen K. Herman)

Michael G Bagneris
BAGNERIS PIEKSEN & ASSOCIATES, LLC
935 Gravier Street, Suite 2110
Suite 2110
New Orleans, LA 70112

      COUNSEL FOR PLAINTIFF/APPELLANT

             **AFFIRMED**

             **DECEMBER 3, 2024**

*DLD*
*SCJ*
*KKH*

In this succession case, the testator, Loney Landry, executed two wills, the first in favor of his daughter, Vanessa Marie Landry, in 2016 ("the 2016 will"), and the second favoring his nephew, Sandy Williams, in 2017 ("the 2017 will"). Mr. Williams appeals the trial court's judgment finding that the 2017 will was invalid on the grounds that Mr. Landry lacked the mental capacity to execute a last will and testament. For the reasons that follow, we affirm the trial court's judgment.

**FACTS AND PROCEDURAL HISTORY**

On February 19, 2016, Mr. Landry executed a last will and testament in which he bequeathed his entire estate to his daughter, Ms. Landry. In the 2016 will, Mr. Landry also named Ms. Landry as the independent executrix of his estate. On September 26, 2017, Mr. Landry executed a second last will and testament in which he bequeathed the funds deposited in Capitol One Bank account to Ms. Landry and bequeathed the remainder of his estate to his nephew, Mr. Williams, who was also named the independent executor of the estate.

1

Mr. Landry passed away on October 12, 2017. On February 6, 2018, Mr. Williams filed a petition to open the succession of Mr. Landry and to name Mr. Williams as the executor. Also, on February 6, 2018, Ms. Landry filed a "Petition to Record, File and Execute Notarial Testament, for the Possession of Succession Property with Administration, and for Confirmation of Independent Executor." On April 10, 2018, the trial court entered an order probating the 2016 will and appointing Ms. Landry as the independent executrix of Mr. Landry's succession.

On February 26, 2019, Mr. Williams filed a "Motion in Opposition to Ex Parte Testament and to Request a Contradictory Hearing," arguing that Mr. Landry was of sound mind when he executed the 2017 will, which superseded the 2016 will. Mr. Williams requested that, following a contradictory hearing pursuant to La. C.C.P. art. 2091, the trial court vacate its April 10, 2018 order. On February 24, 2020, the trial court entered a judgment denying Mr. Williams' motion in opposition to the ex parte testament. In its judgment, the trial court also found that the 2016 will executed by Mr. Landry was his last legally valid testament. Mr. Williams appealed this judgment.

This Court found "the record on appeal [did] not include Mr. Landry's medical records, which were introduced and admitted at the contradictory hearing on Mr. Landry's testamentary capacity." *Succession of Landry*, 20-0398, 20-0399, p. 3 (La. App. 4 Cir. 3/31/21), 315 So.3d 949, 952. The Court reasoned that "[i]n order for this court to properly address the argument that Mr. Landry lacked the testamentary capacity to execute a last will and testament, we must review Mr.

2

Landry's medical records, which were introduced at trial, and relied upon by the trial court in rendering its decision." *Id.* at p. 4, 315 So.3d at 952. Therefore, pursuant to La. C.C.P. arts. 2126 and 2132, this Court remanded this matter to the trial court for the limited purpose of correcting the record by supplementing the record on appeal with Mr. Landry's medical records.

Mr. Landry's medical records appear in the record on appeal lodged with this Court on July 3, 2025.

**DISCUSSION**

On appeal, Mr. Williams raises the following assignments of error: (1) the trial judge failed to make the intention of the testator the paramount factor in her decision; (2) the trial judge failed to apply the presumption of testamentary capacity; (3) the trial judge erred by finding that the presumption of testamentary capacity had been overcome by clear and convincing evidence: and (4) the trial judge erred by invalidating the testator's will dated September 26, 2017. In essence, Mr. Williams' argument is that the trial court erred in finding that Ms. Landry had overcome the presumption of testamentary capacity by clear and convincing evidence when it invalidated Mr. Landry's 2017 will.

In our earlier opinion, this Court articulated the law regarding testamentary capacity. The Court explained:

> Capacity to make a valid donation mortis causa must exist at the time the testator executes the testament. La. C.C. 1471. To have capacity to make a donation mortis causa, the person must be able to comprehend generally the nature and consequences of the disposition that he is making. La. C.C. art. 1477. There is a presumption in favor of testamentary capacity, and the validity of a testament should be

3

upheld whenever possible. *Succession of Holzenthal*, 12-0211, p. 10 (La. App. 4 Cir. 9/26/12), 101 So.3d 81, 88. The party alleging incapacity has the burden of proving the lack of capacity at the time the will was executed by clear and convincing evidence to the contrary. *Id.* The "clear and convincing" standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence. *Id.* Comment (f) to La. C.C. art. 1477 provides, in part:

> Cases involving challenges to capacity are fact-intensive. The courts will look both to objective and subjective indicia. Illness, old age, delusions, sedation, etc. may not establish lack of capacity but may be important evidentiary factors. If illness has impaired the donor's mind and rendered him unable to understand, then that evidentiary fact will establish that he does not have donative capacity…. Clearly, no quick litmus paper exists to apply to the evaluation of mental capacity in all cases.

> Many sources of evidence are to be considered when evaluating a testator's capacity. *Succession of Holzenthal*, 12-0211, p. 11, 101 So.3d at 88. In cases involving challenges to testamentary capacity, courts will look to the medical evidence that is available, such as medical records. *Succession of Holzenthal*, 12-0211, p. 10-11, 101 So.3d at 88.

*Succession of Landry*, 20-0398, 20-0399, p. 3, 315 So.3d at 951-952.

According to Mr. Landry's medical records, he was admitted to the hospital on September 21, 2017 due to altered mental status and suspected seizure activity. His medical records indicated episodes of delirium and confusion, as well as a host of other medical conditions and illnesses. Mr. Landry took numerous medications, including chronic prescription opiates. During this hospitalization, Mr. Landry was diagnosed with terminal prostrate cancer. On September 26, 2017, he was discharged from the hospital in stable condition to hospice/home care.

At trial, Patricia Moore Williams, the ex-wife of Sandy Williams, was called as a witness. Ms. Williams acted as Mr. Landry's primary caregiver for approximately the last year and a half of his life. She testified that she took Mr.

4

Landry to the hospital on September 21, 2017, when she found him "unresponsive." She also testified that she was the one who filled out and signed all of Mr. Landry's forms at the hospital because he was unable to fill out the forms "hisself."

Ms. Williams was present at the hospital when Michael Katz, the attorney who prepared the 2017 will, came to see Mr. Landry. Ms. Williams testified that it was not Mr. Landry that called Mr. Katz to come to the hospital, but her ex-husband, Sandy Williams. Ms. Williams also testified that she did not want to and did not witness the will. Mr. Katz then found a young lady who happened to be down the hall at the time named Amaya Miller to witness the document. Ms. Miller was unknown to Mr. Katz before this meeting and she was also a stranger to both Mr. Landry and Ms. Williams.

When asked about Mr. Landry's mental state on the day he signed the 2017 will, Ms. Williams testified: "Mr. Landry, he was kind of confused." . . . "He didn't know what he really wanted to do." As to why Mr. Landry signed the will, Ms. Williams testified that "he felt like he was being forced." She also offered that: "He didn't want to sign it." Ms. Williams further testified that Mr. Katz had come to the hospital on two occasions and that Mr. Landry wanted him to come a third time to make some changes to the will, but she "didn't call the lawyer back the third time."

As stated above, the "narrow issue" before this Court is whether the trial court was manifestly erroneous or clearly wrong in finding that Ms. Landry met her burden of proving that Mr. Landry lacked testamentary capacity at the time of the making of the 2017 will by clear and convincing evidence. *See Succession of Braud*, 94-0668, p. 4 (La. App. 4 Cir. 11/17/94), 646 So.2d 1168, 1170. Clearly,

the trial court found Ms. Williams to be a very credible witness; a finding which can virtually never be manifestly erroneous in the absence of objective evidence to the contrary. *See Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989).

The evidence in the record before this Court also indicates that the 2017 will was defective as to form. The 2017 will had a creation date of September 25, 2017, but was signed on September 26, 2017. Mr. Landry's hospital records from his final hospitalization also indicate that he was not able to sign the admittance documents nor any of the treating/consultation documents during his entire stay in the hospital. We also note that that Mr. Katz failed to properly ascertain whether Amaya Miller, the witness to the testament, was duly qualified to act in such capacity. There was no inquiry as to her age and no request for production of any form of identification from Ms. Miller, whom Mr. Katz admits he did not know and had never met before. Several handwritten changes were also made to the type written document that were not signed or dated by the testator and it cannot be determined exactly when those changes were made. These irregularities suggest that the 2017 will was defective on its face.

Although there may be a presumption of testamentary capacity, the trial court clearly believed that Ms. Landry overcame that presumption by clear and convincing evidence when it found that the 2017 will was invalid on the grounds that Mr. Landry lacked the mental capacity to execute a last will and testament. Therefore, based on the record before this Court, consisting of the testimony at trial, as well as other evidence admitted at trial, including Mr. Landry's medical records, we cannot say that such a finding was manifestly erroneous or clearly wrong.

**CONCLUSION**

For the above and foregoing reasons, the trial court's judgment finding the 2017 will invalid is affirmed.

**AFFIRMED**