987 So.2d 387 (2008)
SUCCESSION OF Brooks Stell HOLLIS.
Succession of Ollie V. Tucker Hollis.
Nos. 43,315-CA, 43,316-CA.
Court of Appeal of Louisiana, Second Circuit.
June 18, 2008.
*389 William H. Ledbetter, Jr., Bossier City, for Appellants Judy Hollis Steeland and Robert W. Hollis.
Jerald R. Harper, Shreveport, for Appellee Michael Scott Hollis.
Before WILLIAMS, MOORE and LOLLEY, JJ.
MOORE, J.
This is an appeal of a summary judgment dismissing the plaintiffs' petition which alleged that the defendant used fraud and undue influence to purchase stock in a closely-held family business and in assisting his mother with her will. After review of the record, we affirm the judgment of the trial court.

FACTS
The matters of record indicate that Brooks Hollis and Ollie Tucker Hollis had five children who are now adults. Brooks died in 1990, and his wife, Ollie, was named administratrix of his estate; she served in that capacity until her death on May 24, 2003. One of the siblings, Judy D. Steeland, succeeded Ollie as administratrix of Brooks' estate.
While living, Brooks Hollis owned a closely-held corporation called Trailer Equipment Manufacturing, Inc. ("Trailer"). One of his sons, Michael Scott Hollis ("Scott"), continued to work in this family business after his father died. Scott advised and assisted his mother in decisions regarding the corporation and attended meetings and communicated with the attorney for the succession of his father. When Ollie died in 2003, Scott was named administrator of her succession.
In the mid-1990's, pursuant to a decision of the succession administrator, Scott purchased Trailer stock from Brooks' succession at a private sale, allegedly to pay succession debts. These purchases were approved by the heirs, who were Scott's siblings. The first purchase in May of 1995 involved 11 shares of stock for which Scott paid $2,500 per share. The second sale occurred in 1998, when Scott purchased 26 shares of Trailer stock for $2,500 per share. Scott executed a promissory note for the purchase price in the second sale, which he did not pay off until three months after his mother's death on May 24, 2003.
According to Judy Steeland, the defendant's sister, this dispute involving the stock arose shortly after the family attorney, John W. Montgomery, read to the five children an olographic will drafted by Ollie on September 23, 1997. In that will, Ollie states that during her lifetime, she donated to Scott all of the common stock that *390 she owned in Trailer, and she confirms and ratifies that donation. The will further reads that if, for any reason, the donations are deemed invalid, she bequeaths to him all the shares of the corporation. Ollie also assigned the value of the stock at the same value she assigned in the donations, and that same value would be used to determine whether Scott had received his pro rata portion. Finally, if the value of the stock donated to Scott turned out to be less than his pro rata share, he would be entitled to receive sufficient value to make up his pro rata portion.
Judy Steeland does not contest that the will is entirely in her mother's own handwriting. She contends, however, that Scott assisted or directed her in writing the will because of the provisions confirming the inter vivos donation of the stock and the bequest giving Scott the right to receive a pro rata share of the remainder of the estate if the value of her ownership in Trailer is less than the pro rata shares. She stated that her mother previously had led her to believe that she was going to leave Scott all her interest in Trailer, and the other four children would divide the remaining estate equally. Instead, she said, the will provides that Scott is entitled to an equalizing share of the remaining estate if the value of the Trailer stock she donated to him is less than the value of pro rata share inherited by the other siblings. Judy did not believe that her mother was capable of writing these provisions without instruction or direction from Scott.
On May 11, 2005, Judy Steeland and Robert Hollis filed an amended and restated petition against Scott Hollis individually and in his capacity as executor of the Succession of Ollie Tucker Hollis to (1) annul the 1995 and 1998 sale of corporate stock to Scott; (2) annul and set aside Ollie's probated olographic will; and, (3) annul and set aside the donations inter vivos.
The petition alleges that although Ollie was appointed to serve as administratrix of Brooks' succession on the advice of the family attorney, she actually lacked the capability to perform her duties as succession representative. Plaintiffs allege that Ollie was "controlled and unduly influenced" by Scott regarding company matters. They contend that Scott was the main contact person for attorney John W. Montgomery for the succession of Brooks Hollis, had numerous meetings with him alone, and that Scott accompanied Ollie when she attended meetings with the attorney relating to Brooks' succession. Mr. Montgomery, the plaintiffs allege, also represented Trailer prior to Brooks' death.
Specifically, plaintiffs allege that while Ollie was acting as administratrix in March of 1995, she and her attorney informed the plaintiffs and the other heirs that the succession was in debt for $133,182.57, and that Ollie needed to sell corporate stock to pay the debt. (At the time of Brooks' death, Scott owned only one share of stock in the corporation that he purchased from Brooks for $2,500.)[1] Accordingly, in May of 1995, Ollie sold Scott 11 shares of Trailer stock for $2,500 per share. Plaintiffs contend that the book value of the stock at this time was actually $7,018, based on a financial statement generated at the end of 1994 stating the value of the corporation.
In 1998, Ollie filed a petition to sell 26 additional shares of stock for $2,500 per share to Scott, allegedly under the pretext of needing to pay succession debts. Scott did not pay cash for the shares, but instead *391 executed a promissory note for the $65,000 purchase price and which would become due on December 31, 1998. However, Scott did not pay the note until August of 2003, two months after Ollie's death. Plaintiffs contend that the book value of the stock was actually over $8,000 per share at the time of this sale, and furthermore, the stock sale was not made to pay debts as represented by Ollie, since Scott's payment was evidenced by the promissory note.
Plaintiffs seek to rescind the sale of the stock, refund Scott his purchase price and return the stock to the succession, or alternatively, obtain a judgment awarding the succession the difference between the alleged book value of the 37 shares of stock and what Scott actually paid. They contend that Scott exercised undue influence on Ollie, and in fact, was actually handling their father's succession in Ollie's place.
Additionally, plaintiffs contest Ollie's inter vivos donation of her shares of stock that she confirmed in her will. They also seek nullification of the last will and testament confirming the donations, and that Scott be named a legatee to any remaining shares of stock owned by Ollie individually. They contend that any donations made by Ollie were due to undue influence of Scott, and that Ollie's last will and testament was not Ollie's last will and testament, but rather a will provided by Scott for Ollie to copy in her own handwriting.
Alternatively, the plaintiffs allege that the donations are the result of undue influence by Scott, and that if there were any shares of Trailer stock that Ollie owned, they should be divided equally among the legatees.
In a second alternative argument, plaintiffs allege that Scott placed Ollie under duress to sell or donate shares of stock to him by threatening to resign from Trailer if she did not transfer her stock to him.
Scott moved for summary judgment alleging that the plaintiffs could not present evidence of undue influence or fraud. In opposition to the motion, the plaintiffs presented their depositions.
The court noted that two siblings approved the stock sale and two other siblings did not join the plaintiffs in their petition. The court observed that there was no evidence of Ollie's lack of capacity and that she was represented by an attorney during the relevant period. The court observed that plaintiff Robert Hollis said in his deposition that he would bring out the alleged fraud and undue influence at trial; otherwise, the deposition did not disclose facts showing fraud or undue influence. Similarly, the court found that Judy Steeland's deposition did not show any specific instances of fraud or undue influence; her position that Scott exercised undue influence was based solely on the difference in the alleged book value of the stock and what Scott actually paid for the stock.
Concluding that there was a lack of factual support for an essential element of the plaintiffs' claim and that there were no genuine issues of material fact, the court granted summary judgment in the defendant's favor and dismissed the suit.
The plaintiffs filed this appeal alleging several assignments of error:

Discussion
The standard of review for summary judgments on appeal is de novo. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730. A motion for summary judgment which shows that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1). Pursuant to the 1996 amendments to this article, summary judgments are now favored, and the rules regarding *392 such are to be liberally applied. The non-moving party may no longer rely on the allegations in its pleadings in opposing a summary judgment. If the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact, and the motion should be granted. La. C.C.P. art. 966 C(2); Dowles v. Conagra, Inc., 43,074 (La.App. 2 Cir. 3/26/08), 980 So.2d 180, writ denied, 2004-2386 (La.12/10/04), 888 So.2d 839.
By their first assignment of error, the plaintiffs argue that the trial court erred in finding no issues of material fact as to any undue influence committed by Scott Hollis individually or as the executor of his mother's succession. On the contrary, the plaintiffs complain that Scott exercised undue influence over their mother, Ollie, the administratrix of the Succession of Brooks Hollis. Specifically, the plaintiffs contest Scott's purchase of 37 shares of Trailer stock from the Succession of Brooks Hollis bought in the two sales described above. Although their mother was the administratrix of the succession and confected the sale, implicit in their argument is the position that Scott was the de facto administrator of the succession and falsely concocted the need to sell the stock to pay succession debts. The plaintiffs also contend that while their mother Ollie was alive, Scott used undue influence and duress to persuade her to donate her shares of stock in Trailer to him and directed her to write an olographic will in which she confirmed the donations. The will, they argue, was actually contrary to her previously expressed intention to give the remainder of the estate to the other four children alone. Hence, against Ollie's succession they seek nullification of Ollie's inter vivos donation of stock and the olographic will and to bring Ollie's shares back into the her succession.
To support their allegations, the two plaintiffs submitted their depositions, and an affidavit of Allison R. Jackson, a certified public accountant, who attested that a different and higher value of the shares donated and sold would have resulted if a full valuation of Trailer had been performed.
Robert Hollis testified that as an adult, he worked for Trailer for approximately six years beginning in 1982 and until he was terminated by Scott in 1988. He said he did not know the reason why he was terminated. For the past ten years he has been intermittently employed. He admitted that he was unhappy over these circumstances and that he and Scott had a poor relationship. He admitted that he did not know whether Scott did anything wrong, but stated that he believed Scott "coerced her with fraud" and used "unfair influence" over Ollie to obtain the family business unfairly.
Judy Steeland testified in her deposition that her mother was not capable of making any decisions regarding the company or any business matters, and stated that she had to be taught how to write a check after Brooks died. She said that Scott essentially controlled her with respect to decisions regarding Trailer and threatened to leave the company if he did not get sole ownership. She contends that this amounted to undue influence on her to donate her shares of stock to him. Regarding the sale of the succession stock, Judy Steeland's complaint is that the stock was sold to Scott well below its true market value, and that Scott essentially orchestrated the sale by persuading her mother, as administratrix of the succession to sell the stock to pay succession debts which did not actually exist, evidenced by the fact that he purchased the stock in the second transaction by promissory note, *393 which he did not pay until August of 2003. She also believed that Scott used undue influence and duress to obtain Ollie's stock in Trailer.
Before considering the question of whether Scott used undue influence and fraud, however, the plaintiffs have raised the closely related question of Ollie's competence to be administratrix of the succession, implying that Scott actually called the shots.

Ollie's Capacity as Administratrix in the Succession of Brooks Hollis; Her Capacity to Donate Inter Vivos and Mortis Causa
We note initially that Judy Steeland testified that she believed Ollie did not have the capacity or the ability to be the administrator of Brooks' succession; and, therefore, she was subject to duress and undue influence by Scott. Judy Steeland states that the children acquiesced in having her appointed administratrix of the succession on the advice of their family attorney, John W. Montgomery. However, in addition to the matter of learning to write checks after Brooks passed away, Judy stated that there are other circumstances to which she would be able to testify that would show Ollie was not qualified. Finally, she contends that Scott was actually acting as administrator at least with respect to Trailer, and used his influence and his threats to quit the company to persuade Ollie to sell the stock in Brooks' succession to him.
We observe that there is no evidence in the record of any effort by the plaintiffs, heirs or other parties in interest to remove Ollie as administratrix of the succession during her tenure in that position. La. C.C.P. art. 3182[2]. Instead, nearly a decade after the sales and several years after Ollie passed away, the plaintiffs are seeking to rescind the two sales of stock to Scott essentially on grounds that Ollie did not have the capacity to understand her duties as administratrix, at least insofar as these transactions were concerned. They seek to have the donations of stock nullified as well.
All persons have the capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting. La. C.C. art. 1918. Thus, the presumption is that all persons have the capacity to contract. A lack of capacity must be shown by clear and convincing evidence. Florida v. Stokes, 05-2004 (La.App. 1 Cir. 9/20/06), 944 So.2d 598, 603.
Addressing an attack on the contractual capacity of a deceased party, La. C.C. art. 1926 provides as follows:
A contract made by a noninterdicted person deprived of reason at the time of contracting may be attacked after his death, on the ground of incapacity, only when the contract is gratuitous, or it evidences lack of understanding, or was made within thirty days of his death, or when application for interdiction was filed before his death.
*394 Similarly, all persons are presumed capable of donating their property whether by donation inter vivos or mortis causa. La. C.C. art. 1470. This presumption of capacity puts the burden of proving lack of capacity on the party attacking the donation. Succession of Kilpatrick, 422 So.2d 464 (La.App. 2 Cir.1982), writs denied 429 So.2d 126 (La.1983). Proof of lack of capacity should overcome the presumption of capacity by clear and convincing evidence. La. C.C. art. 1482. It is sufficient that the capacity to donate exists at the moment the donation is made. La. C.C. art. 1471.
To have the capacity to make a donation inter vivos or mortis causa, a person must also be able to comprehend generally the nature and consequences of the disposition that he is making. La. C.C. art. 1477. A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of fraud or duress. La. C.C. art. 1478. A donation shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor. La. C.C. art. 1479. A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. La. C.C. art. 1983.
In this case, the capacity alleged to be lacking was Ollie's lack of understanding with regard to the Trailer stock transactions, or fraud, duress, and undue influence exercised by Scott with respect to the donations inter vivos and mortis causa. In determining testamentary capacity, the question is whether the testator understood the nature of the disposition and appreciated its effects. Cupples v. Pruitt, 32,786 (La.App. 2 Cir. 3/1/00), 754 So.2d 328, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1108; La. C.C. art. 1477. The party alleging incapacity has the burden of proving lack of capacity at the time the will was executed by clear and convincing evidence. Succession of Braud, 94-0668 (La.App. 4 Cir. 11/17/94), 646 So.2d 1168, writ denied, 95-0383 (La.3/30/95), 651 So.2d 841. In order to prove a matter by clear and convincing evidence, the party must demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Succession of Braud, supra.
Our review of the allegations in the petition and the papers submitted by plaintiffs in opposing the defendant's motion for summary judgment indicate that plaintiffs will not meet the clear and convincing evidentiary standard to show lack of capacity, nor does it appear that plaintiffs would be able to make any showing that Ollie lacked capacity or was deprived of reason at the time she applied to the court and obtained approval to sell the Trailer stock. Ollie was represented by an attorney during this period, and there is no evidence of any wrongdoing or malfeasance. There is no medical evidence that she was incompetent and there is no evidence that anyone initiated proceedings to interdict Ollie during the time the sale of the stock occurred or during the time the donations were made. The allegation that Scott threatened to quit the company if he was not able to obtain ownership does not constitute duress, inasmuch as Scott had every right to leave the company whenever he wished. A threat of doing a lawful act or a threat of exercising a right does not constitute duress. La. C.C. art. 1962. Besides, Judy Steeland stated that her mother told her that Scott said he would quit if he did not get the company. Apparently Judy Steeland was not concerned about these *395 alleged threats at the time they were voiced.
Having concluded that plaintiffs have failed to come forth with evidence to generate a material issue of fact as to their heavy burden of showing by clear and convincing evidence that Ollie was not competent to administer the Succession of Brooks Hollis, particularly since she was represented by an attorney during this period, the remaining questions are whether a genuine issue of fact exists regarding whether Scott had or exercised undue influence over Ollie, such that her volition was not her own, but Scott's, or whether Scott used fraud to induce Ollie to sell the stock.
Judy Steeland stated in her deposition that her mother had told her that she intended to give Scott the Trailer corporate stock and give the remaining four siblings the remainder of the estate to divide equally. Her complaint about the content of the will is the provision in the olographic will that would allow Scott to obtain an equalizing share of the remainder of the estate in the event that Ollie's donation of Trailer stock to Scott should prove to be of less value that the share of the estate inherited by the other four siblings. Judy Steeland argues that Scott admitted that he had an attorney friend draw up the will and Ollie copied the will by hand.
It is undisputed that Scott and Ollie were close. It also appears that Ollie believed that giving Scott her stock in Trailer amounted to a roughly equal share of the entire estate. It is evident that she intended to divide the remainder of the estate equally among all the remaining children, even though her relationship with Judy Steeland was apparently much closer than her strained relationship with another daughter. The olographic will, in fact, simply evidences an intent by Ollie to treat all of her children equally, and for that reason, she added the provision that allowed Scott to share in the remainder of the estate, should the value of her stock prove to be of lesser value than the other siblings' shares.
For these reasons, we do not find that Ollie was subject to undue influence from Scott. Clearly Scott had an influence on her. However, Ollie's expressed intent to treat the children equally is preserved in the olographic will ratifying the donation of her stock to Scott.
Plaintiffs also allege that Scott committed fraud in the purchase the stock by inducing Ollie to sell the stock at a price below what they believe is the market value of the stock. Fraud is a misrepresentation or a suppression of the truth made with the intention to obtain an unjust advantage for one party or cause a loss to the other party. La. C.C. art. 1953. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty unless a relation of confidence has induced the party to rely on the other's assertions or representations. La. C.C. art. 1954. Contractual fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957.
Scott stated in his deposition that he paid $2,500 for each share of stock because that is what his father told him the stock was worth and that was all he was willing to pay for the stock. Although Judy stated that she did not like the idea of selling the stock to pay the succession debt, she said that she did not further investigate because Ollie was represented by an attorney. All of the other siblings also ratified the sale.
Because the defendants were aware of the stock transaction and the price Scott *396 was going to pay for the stock, and Ollie was represented by an attorney, we do not find circumstances that generate a material issue of fact as to whether Ollie was induced by fraud by Scott in her decision to sell the stock at $2,500 per share.
By their second assignment of error, the plaintiffs submit that the trial court erred in finding that fraud and undue influence are essential elements to their claim. They allege that their petition contains allegations that are beyond the allegation of fraud and undue influence against Scott; instead, they are allegations by the current successor administratrix (Judy Steeland) against the prior administratrix, Ollie, regarding the sale of the stock to Scott.
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure to so act. La. C.C.P. art. 3191.
A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court as provided by law. La. C.C.P. art. 3261. The phrase "for any other purpose" means any other lawful purpose or reason of necessity. It does not give to the executor or administrator carte blanche to sell succession property for any purpose or reason that he may deem sufficient. Succession of Pipitone, 204 La. 391, 15 So.2d 801 (1943).
La. C.C.P. art. 3281 provides:
A. A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale. If an agreement to sell has been executed in accordance with Paragraph B of this Article, a copy of such agreement shall be annexed to the petition.
B. A succession representative may execute, without prior court authority, an agreement to sell succession property at private sale, subject to the suspensive condition that the court approve the proposed sale.
C. The succession representative shall be obligated to file a petition in accordance with Paragraph A of this Article within thirty (30) days of the date of execution of such an agreement to sell.
An opposition to a proposed private sale of succession property may be filed only by an heir, legatee, or creditor. La. C.C.P. art. 3283.
In pertinent part, La. C.C.P. art. 3284 states:
A. If no opposition has been filed timely and the court considers the sale to be to the best interests of the succession, the court shall render an order authorizing the sale and shall fix the minimum price to be accepted. The price may be fixed exactly as the appraised value, as a fraction of the appraised value, as more than the appraised value, or as not less than the appraised value of the property. If an agreement to sell has been executed as provided in Article 3281 and the price and conditions fixed by the court are the price and conditions set in the agreement, the order of court authorizing the sale under such agreement shall fulfill the suspensive condition of the agreement, which thereafter shall be enforceable by the parties to the agreement.
B. Nothing contained in this Article shall affect the general duties of a succession representative.

*397 C. An opposition shall be tried as a summary proceeding.
The approval of an application to sell succession property at a private sale rests within the sound discretion of the trial court. Succession of Shepherd, 454 So.2d 1265 (La.App. 2 Cir.1984); Succession of Taglialavore, 500 So.2d 393 (La. 1987). There must be good reasons for the sale and it must be in the best interest of the succession. In allowing private sales of succession property, the requirement of court approval was included as a safeguard against the inappropriate disposition of succession property. Succession of Shepherd, supra.
In this instance all heirs were notified of the sale of the stock, the price and the stated reasons; no heir raised opposition to the sale, and the court approved the sale. In other words, the plaintiffs ratified the sales they now seek to rescind, contending now that the market value at the time of sale was much greater. Judy Steeland stated that she did not like the idea of selling the stock and spoke to Mr. Montgomery about alternatives, but she took no further action. In essence, the primary ground upon which plaintiffs base their claim regarding the stock sales is that the market value of the stock was greater than the price Scott paid.
We are not convinced, however, based on this record, that plaintiffs have established that the fair market value of the stock was in excess of the price for which it was sold in this case, particularly since this company is a closely held corporation, and frequently in such cases, the revenues of the corporation derive largely from the personal efforts of a shareholder or the shareholders. See Setliff v. Erma Adams, Inc., 2006-182 (La.App. 3 Cir. 5/31/06), 931 So.2d 1214. Additionally, the fair market value of stock can be determined by a number of methods. For example, in Moody v. Moody, 622 So.2d 1381 (La.App. 1 Cir.1993), accountants used five different methods to determine the value of stock in a community property partition proceeding: book value, economic net worth, capitalization of earnings, capitalization of cash flow, and price-earnings ratio. Id.
Be that as it may, because the plaintiffs did not timely raise any objection to the sale as provided by law, the only remaining claim regarding the sale of the stock is a suit against Ollie, who is now deceased, that she breached her fiduciary duty as succession representative by failing to make a determination of market value or make an arms-length sale of the stock. Scurria v. Hodge, 31,207, 31,208 (La.App. 2 Cir. 10/30/98), 720 So.2d 460, writ denied, XXXX-XXXX (La.3/19/99), 739 So.2d 782.
After review of the plaintiffs' petition and the allegations contained therein, we find no claim against Ollie Tucker Hollis for breach of her fiduciary duties as administratrix of the Succession of Brooks Hollis. The allegations of plaintiffs' petition allege that Ollie lacked capacity to be succession administratrix and that she was subject to fraud and undue influence by Scott. Accordingly, for the reasons stated earlier in this opinion, we find this assignment to be without merit.
By their third and fourth assignments of error, the plaintiffs contend that the trial court erred when it made findings of fact with regard to the alleged necessity to sell the stock due to debt and its value, the trial court erred in making factual inferences in favor of the defendant and granting the motion for summary judgment instead of resolving inferences in favor of denying the motion for summary judgment.
In his motion for summary judgment, the defendant pointed out that the plaintiffs failed to allege facts that would support *398 a claim of fraud or undue influence. The trial court found in reviewing the plaintiffs' papers opposing the motion for summary judgment that there was a lack of factual support, including specificity, to support the allegations of undue influence and fraud, which are essential to the plaintiffs' claim in this case. Instead, the plaintiffs' allegations of fraud and undue influence are largely conclusory, and the allegation that fraud occurred because Scott paid for the second transaction with a promissory note, which implies that there was no urgency to sell the stock as Ollie indicated, is not, in and of itself, circumstantial proof of fraud. Scott paid the note off with interest shortly after Ollie died.
We therefore agree with the trial court that there is a lack of factual support necessary to meet even the preponderance standard required in this kind of case. Accordingly, summary judgment is appropriate.
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the plaintiffs.
AFFIRMED.
NOTES
[1] Our review of the record indicates that Scott owned either one or four shares of Trailer at the time of Brooks Hollis' death.
[2] The court may remove any succession representative who is or has become disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Art. 3097(4), or has failed to give notice of his application for appointment when required under Art. 3093.

The court on its own motion may, and on motion of any interested party shall, order the succession representative sought to be removed to show cause why he should not be removed from office. The removal of a succession representative from office does not invalidate any of his official acts performed prior to his removal.