BROWN, Chief Judge.
| ¶ Plaintiff, James Arnold Crowson, III, son of decedent, James Arnold Crowson, Jr., sought to have a private sale of succession property vacated and the property returned to the succession. The trial court granted summary judgment in favor of the defendant/administratrix, Jean Crowson, dismissing plaintiffs petition. In addition, the trial court granted an exception of peremption in favor of defendant/purchaser, Green Oak Farms, Inc. For the reasons stated herein, we reverse and remand.

Facts and Procedural Background

James Arnold Crowson, Jr. (“decedent”) died September 29, 2003, in Shreveport, Louisiana. Decedent was married twice. His first marriage was to Marie Farmer, which ended in divorce in 1952. One child was born of this marriage, James Arnold Crowson, III (“Crowson, III”). Decedent’s second marriage was to Jean McDonald Crowson, who survives him. Four children were born of this marriage: Sara Jean Crowson Harville, Peggy Ruth Crow-son Cash, Ronald Lamar Crowson, and Charles Henry Crowson. Charles Henry Crowson died before decedent and was survived by two minor children, Charles Jeb Crowson and Caitlan Faith Crowson.
Although decedent executed a will, it was not dated, making it invalid. Thus, decedent died intestate. Three years after the death of decedent, Jean Crowson opened the current succession proceeding and was appointed administratrix.
Relevant to this appeal, the detailed descriptive list filed in the succession proceedings shows community property consisting of approximately 210 acres in Cad-do Parish, Louisiana, valued at $550,660.50. It is actually listed as two tracts: a 34.55 acre tract on which the family ^residence is located, and a 176.05 acre tract referred to as the farm. Decedent’s succession would own one-half of this property subject to the surviving spouse’s usufruct.
On June 13, 2008, Jean Crowson filed a Petition and Order for Authority to Convey Immovable Property at Private Sale— the 210 acres.[1] The petition sought to convey the property at a private sale to Green Oaks Farm, Inc., (hereinafter “Green Oaks”) for the stated purpose of returning the property from its nominal owners (the decedent and Jean Crowson) to its true owner (Green Oaks). Green Oaks was a family corporation owned en *45 tirely by a 1969 trust in which the only shareholders were Jean Crowson’s four children. We note that the petition states that attached as an exhibit is a 1986 cash sale deed, which is relevant to these proceedings. Attached, however, is an unrelated mortgage executed by non-parties. Nonetheless, the trial court, ex parte, signed an order granting Jean Crowson the authority to sell the property at private sale. Thereafter, Jean Crowson advertised the sale of the property in the Shreveport Times on June 30, 2008, and July 22, 2008.
On June 2, 1986, Green Oaks sold by cash sale deed the 210 acres in Caddo Parish, Louisiana to decedent and his wife, Jean Crowson. The cash sale deed stated that “[t]his sale is made for the consideration of the sum of Two Hundred Seventy Thousand Six Hundred Sixty and 50/100 (270,660.50) Dollars cash in hand paid, the receipt which is hereby 1 ..¡acknowledged.” Executing the deed on behalf of Green Oaks was decedent, as chairman of the board, and Jean Crowson, as secretary/treasurer. Both decedent and Jean Crowson also executed the deed as purchasers. The deed was subsequently recorded that same day. ‘
According to Jean Crowson’s deposition testimony, “Whatever Jimmy needed to have money for, he used the land as his bank and he put the land up as collateral to get what he needed. And when the money was paid back, the land was put back in Green Oaks Farms’ name,” and “The only thing we owed Green Oaks Farms is we borrowed the land to borrow money for what Jimmy needed to buy other things.”[2]
Since the trust could not borrow money, the trust’s property was sold to decedent and his wife who would then borrow funds from the Federal Land Bank. After the 1986 transfer of property from Green Oaks to decedent and Jean Crowson, they obtained a loan in the amount of $285,000 from the Federal Land Bank. According to the detailed descriptive list approximately $30,000 was still owed to the Federal Land Bank. Also listed on the detailed descriptive list is a $230,000 debt owed to Green Oaks.[3] In 2008, the debt owed to the Federal Land Bank was fully paid, prompting Jean Crowson’s petition to convey the property back to Green Oaks.
|4On July 31, 2008, Judge Sexton signed a court order that authorized the conveyance of the property to Green Oaks. The conveyance was completed on August 5, 2008. Crowson, III, was unaware of the conveyance of the property to Green Oaks until sometime after the conveyance was finalized.
On October 1, 2008, Crowson, III, filed a motion to vacate the conveyance and to close the succession. Four months after the opening of the succession, Crowson, III, hired an attorney who requested that he be provided information about the conduct of the succession, including copies of any and all pleadings. Over the next two *46 years, Crowson, III, and his counsel continued to seek information about the status of the succession, “particularly as regards the approximate intended date on which the succession would be closed and the intestate heirs put in possession.” Although Crowson, III, received all prior succession pleadings from Jean Crowson’s counsel, he received no service or notification of the Petition and Order To Convey Immovable Property at Private Sale in regards to the 210 acres. This omission occurred even though Crowson, Ill’s, counsel made numerous attempts to contact opposing counsel, including writing a letter dated July 8, 2008, seeking a status update, a time which falls between the first and second newspaper publication notices of the private sale.
In response to Crowson, Ill’s, motion seeking annulment of the sale, Jean Crow-son and the succession filed an exception based upon Crowson, Ill’s, failure to join Green Oaks as a necessary party. The exception was granted and Green Oaks was added by amended petition on April 2, 2009. Green Oaks then filed an exception of no cause of action, urging that as a 1 Bthird party, it was protected by the trial court’s order authorizing the conveyance, and stating that it could not be annulled absent a finding, under La. C.C.P. art. 2004, that the order was obtained by fraud or ill practices. This exception was heard by Judge Lafitte, and judgment granting the exception was issued. Crowson, III, was given 15 days to amend his pleadings. An amended petition alleging fraud or ill practices was timely filed. Specifically, the amended petition alleges that the transaction was a sham, as no consideration was paid, and that it was unauthorized by the Code of Civil Procedure. Thereafter, Green Oaks filed an exception of peremption, and Jean Crowson filed a motion for summary judgment and exception of peremption. The motion for summary judgment and the exceptions of per-emption were heard by Judge Emanuel, and judgment granting Jean Crowson’s motion for summary judgment but denying her exception of peremption was rendered. The trial court also granted Green Oaks exception of peremption. As a result of these adverse rulings, Crowson, III, filed the instant appeal.

Discussion

We note from the outset that, in its oral reasons, the trial court twice denied Jean Crowson’s motion for summary judgment. Nonetheless, the signed final judgment of the trial court granted Jean Crowson’s motion for summary judgment; the basis for this ruling is unclear. The trial court granted Green Oaks’ exception of peremption based upon the fact that plaintiff failed to bring forth a claim for fraud or ill practices against it within the one-year peremptive period set forth in La. C.C.P. art. 2004.
| Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Cote v. City of Shreveport, 46,571 (La.App.2d Cir.09/21/11), 73 So.3d 435. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). The procedure is favored under Louisiana law and shall be construed to accomplish these ends. Id. Summary judgment shall be rendered “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
Jean Crowson argues that the succession representative is allowed to convey *47 succession property to pay debts and legacies and for any other purpose with authorization by the court. She argues that she properly followed the requirements of advertising and sale as set out in the Code of Civil Procedure. She claims that an untimely objection by Crowson, III should be rejected.
Louisiana Code of Civil Procedure art. 3281 provides that a succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale. Notice of the application for authority to sell succession property at private sale shall be published at least twice for immovable property, in the manner provided by law. A court order shall not be required for the publication of the notice. La. C.C.P. art. 3282. The notice shall be published in the parish in which the succession 17proceeding is pending. When immovable property situated in another parish is to be sold, the notice shall also be published in the parish in which the property is situated. Id. The court may authorize a succession representative to sell succession property to pay debts and legacies or for any other purpose. La. C.C.P. art. 3261. The court may authorize a credit sale, specifying the terms and the security; otherwise, the sale shall be for cash. La. C.C.P. art. 3261. The notice shall state that any opposition to the proposed sale must be filed within seven days from the date of the last publication. La. C.C.P. art. 3282. (Emphasis added).
Jean Crowson cites In re Succession of Hollis, 987 So.2d 387, 43,315 (La.App.2d Cir.06/18/08), writ denied, 08-1632 (La.10/24/08), 992 So.2d 1035, in support of her claim that the opposition was untimely and should be rejected. The Hollis case is distinguishable. In Succession of Hollis, supra, all of the heirs were given prior notification and informed of the price and reason for the sales; no heir raised any objections. Additionally, actual monetary consideration was paid to the succession.
What distinguishes the case sub judice from Succession of Hollis, supra, is that several previous notification’s of other motions to sell mineral interests, which had no value, were sent to Crowson, III, and his attorney; however, no correspondence or notice of any kind was given to Crow-son, III, or his attorney in reference to the petition to sell the 210 acres for no monetary consideration. Under the circumstances of this case, this lack of notification appears to have been intentional. The simple fact is that the private sale of succession property to Green Oaks, which was solely owned [ 8by the four children of the succession representative, clearly alienated the property interests of an heir, Crowson, III. Crowson, Ill’s, interest was not converted to cash or land, it simply vanished. See Mayo v. Doherty, 952 So.2d 853, 06-1187 (La.App.3d Cir.03/07/07), writ denied, 07-0721 (La.05/18/07), 957 So.2d 155.
Crowson, III, contends on appeal that the conveyance at issue is not authorized by any provision of the Louisiana Code of Civil Procedure, as it was made for no consideration, and, as such, the two-year prescriptive period set forth in La. R.S. 9:5632 is controlling. Thus, considering that Crowson, Ill’s, original, supplemental and amended motions were all filed within the two-year prescriptive period, he urges that the trial court erred in granting both the motion for summary judgment filed by Jean Crowson and the exception of peremption filed by Green Oaks.
La. R.S. 9:5632, entitled “Actions against succession representatives, tutors, and curators; defect in private sales or mortgages,” provides, in part:
*48 (A). When the legal procedure is defective or does not comply with the requisites of law in the alienation, encumbrance, or lease of movable or immovable property made by a legal representative of a succession, minor, or interdict, provided an order of court has been entered authorizing such alienation, encumbrance, or lease, any action shall be prescribed against by those claiming such defect or lack of compliance after the lapse of two years from the time of making such alienation, encumbrance, or lease.
Furthermore, as it pertains to actions to set aside a sale of succession property because of a “informalities of legal procedure,” La. R.S. 9:5622 states, in pertinent part:
All informalities of legal procedure connected with or growing out of any sale at public auction or at private sale of real or personal property made by any sheriff of the Parishes of this State, licensed auctioneer, or other persons authorized by an order of the courts of this State, to sell 19at public auction or at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale.
La. R.S. 9:1454.1 sets forth:
Any and all informalities of legal procedure connected with or growing out of any private sale of any succession property by executors or administrators ... authorized by an order of the courts of this state, to sell at private sale, shall be prescribed against by those claiming under such sale after the lapse of two years from the date of the sale; provided, that where any such informality of legal procedure has existed for a period of two years prior to July 27, 1960, an action to annul because of such informality must be brought within six months from and after July 27,1960.
In the case sub judice, the private sale of the 210 acres took place on August 5, 2008, for the stated purpose of vesting title in the rightful owner. Whether Green Oaks was the rightful owner is not before this court. The issue before this court is whether a “sale” for no cash consideration, and in which the petition to sell states no price or conditions, is an informality of legal procedure.
Both Jean Crowson and Green Oaks contend that, regardless of the lack of consideration, cause (and not consideration) is sufficient to obligate oneself. La. C.C.P. art. 1967. They assert that Jean Crowson’s desire as succession representative to return the property to its rightful owner was sufficient cause and that consideration was not required. Even though they posit that consideration is not required, Jean Crowson and Green Oaks alternatively argue that there was consideration for the conveyance: satisfaction of the $230,000 debt owed by the decedent to Green Oaks as listed in the detailed descriptive list. We note, however, that looking within the four corners of the 1986 cash sale deed, which was not attached to the | ^petition to sell the property as stated, Green Oaks acknowledged receipt of the full purchase price.
First, the Code of Civil Procedure clearly states that “Sales of succession property shall be for cash, unless ... the court authorizes credit sale.” La. C.C.P. art. 3263. (Emphasis added). The word “shall” is mandatory. La. R.S. 1:3. Here, defendants admit that there was no exchange of money. Second, a clear reading of the petition to sell reflects that the price and conditions of the sale, as required by La. C.C.P. art. 3281, were not set forth therein. At a minimum, these constitute informalities of legal procedure connected *49 with or growing out of a private sale. As to defendants’ second, and alternative argument — that satisfaction of the $230,000 debt owed by the decedent to Green Oaks should be construed as consideration — we find that this was a sham transaction and it does not fall under the Code of Civil Procedure’s parameters for a private sale.[4]
Accordingly, since the private sale of the immovable property occurred on August 5, 2008, and Crowson, Ill’s, motion seeking to annul the property transfer was filed on October 1, 2008, and all supplemental and amended motions were filed well within the two-year prescriptive periods set forth in La. R.S. 9:5632, 9:5622 and 9:1454.1, we find that the trial court erred in its granting of Jean Crowson’s motion for summary judgment and Green Oaks’ exception of peremption.

Conclusion

hiFor the reasons stated, the trial court’s granting of summary judgment in favor of defendant, Jean Crowson, individually and in her capacity as administratrix of the succession of James Arnold Crow-son, Jr., is hereby reversed. Likewise, the trial court’s sustaining of defendant, Green Oaks Farm, Inc.’s, peremptory exception of peremption is also reversed. This matter is remanded for further proceedings. Costs of this appeal are assessed evenly to defendants.

. On two prior occasions, August 2006 and January 2007, Jean Crowson petitioned the court for authority to sell immovable property at private sale. These petitions pertained to a gas well and multiple oil and gas leases. These transactions are not part of this nullification proceeding. In both of these petitions, Crowson, Ill’s, attorney was notified and implicitly acquiesced in the request.

. In brief, Jean Crowson’s attorney states that a similar sale from Green Oaks to decedent and Jean Crowson for the purposes of obtaining a loan occurred in 1981. Plaintiff, however, asserts that unlike the present situation, in which the property remained in decedent's name for over 20 years, decedent and Jean Crowson transferred the property back to Green Oaks four days after receiving that loan.

. The debt owed Green Oaks is confusing. It is listed on the detailed descriptive list, and Jean Crowson and Green Oaks rely on it for an alternative argument. In her deposition, however, Jean Crowson is somewhat contradictory. She states that the debt listed is "the money that we owed Green Oaks Farms for the land." Yet, she also seems to assert that they did not actually owe Green Oaks any money.

. An administrator may transfer by giving in payment any succession property in satisfaction of secured or unsecured debts. La. C.C.P. art. 3295. To this end, he shall present to the judge a petition setting forth the nature of the property, the amount of the encumbrances if any, and the reasons why he deems it in the best interest of the succession to convey the property in satisfaction of the debt or debts. La. C.C.P. art. 3296.