Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,771-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
DAN "CHIP" CHISHOLM, II

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Madison, Louisiana
Trial Court No. 5010

Honorable John Durham Crigler, Judge

* * * * *

| | |
|---|---|
| BREITHAUPT DUBOS & WOLLESON<br>By: P. Scott Wolleson | Counsel for Appellant,<br>Rachael Gray, on Behalf<br>of her Minor Child,<br>Emily L. Chisholm |
| BISHOP PAXON CRIGLER & MOBERLEY<br>By: Edwin S. Moberley, IV | Counsel for Appellees,<br>Dan V. Chisholm and<br>Succession of Dan<br>"Chip" Chisholm, II |

* * * * *

Before COX, STEPHENS, and BODDIE (*Ad Hoc*), JJ.

**STEPHENS, J.**

Rachael Gray, on behalf of her minor child, appeals judgments of the Sixth Judicial Court, Parish of Madison, State of Louisiana, approving and homologating the final account in the Succession of Dan "Chip" Chisholm, II, discharging Dan Chisholm, appellee herein, as succession administrator, canceling his bond, and denying her motion for new trial. For the following reasons, the judgments of the trial court are reversed.

## FACTS AND PROCEDURAL HISTORY

This matter involves the sale of property belonging to the succession of Dan "Chip" Chisholm, II ("Chip"). Chip died intestate on July 9, 2017. He was survived by one minor child, born of his prior marriage to Rachael Gray. Chip's father, Dan V. Chisholm ("Dan"), was appointed administrator of the succession, and he posted a $50,000 commercial bond. To protect her minor child's interest in the assets of the succession, Rachael filed a notice of appearance and answer. Chip died in possession of a 51% membership interest (55 units) in Big Tyme Inventions, LLC (the "membership interest"), which is a closely-held limited liability company doing business as CornXpress (the "company").[1] On July 16, 2018, Dan filed a petition of authority to sell securities pursuant to La. C.C.P. art. 3285, seeking to sell "55 units of Big Tyme Inventions, LLC a Mississippi Limited Liability Company," which the petition alleged to be "marketable securities." Rachael was not served with this petition. Following the issuance of an

---

[1] The company developed and manufactures agricultural vending machines that are purportedly used in at least 16 states across the country to provide feed for wildlife, livestock, and zoo animals.

ex-parte order authorizing the sale, also dated July 16, 2018, Dan sold the membership interest to Chip's former partner in the company for $10,000. Thereafter, on August 7, 2018, the trial court rendered a judgment approving and homologating the final account, discharging Dan as the administrator of the succession, canceling the bond, and placing any remaining monies of the estate in a bank account for the benefit of the minor child. Rachael was not served with a copy of either the petition for homologation of final account or the August 7, 2018, judgment. On June 20, 2019, Rachael filed a motion for new trial and a petition for nullity of the sale of succession assets and damages pertaining to Dan's sale of the membership interest.[2] The motion for new trial was denied on March 9, 2020, and this appeal by Rachael ensued.

## DISCUSSION

In her first two assignments of error, Rachael asserts the trial court erred by authorizing the sale of the succession's membership interest in the company utilizing the procedure available for the sale of stocks and bonds of a succession rather than the sale of a movable asset of the succession. We agree.

A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court as provided by law. La. C.C.P. art. 3261. The phrase "for any other purpose" means any other lawful purpose or reason of necessity. It does not give to the executor or administrator carte blanche to sell succession property for any purpose or reason that he may deem sufficient. *Succession*

---

[2] The petition for nullity of the sale of succession assets and damages is still pending in the trial court.

*of Pipitone*, 204 La. 391, 15 So. 2d 801 (1943); *In re Succession of Hollis*, 43,315 (La. App. 2 Cir. 6/18/08), 987 So. 2d 387, *writ denied*, 2008-1632 (La. 10/24/08), 992 So. 2d 1035.

A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale. La. C.C.P. art. 3281. Notice of the application for authority to sell succession property at private sale shall be published at least once for movable property, and at least twice for immovable property, in the manner provided by law. La. C.C.P. art. 3282. The notice shall state that any opposition to the proposed sale must be filed within seven days from the date of the last publication. *Id.* If no opposition has been filed timely and the court considers the sale to be to the best interests of the succession, the court shall render an order authorizing the sale and shall fix the minimum price to be accepted. La. C.C.P. art. 3284. The approval of an application to sell succession property at a private sale rests within the sound discretion of the trial court. There must be good reasons for the sale and it must be in the best interests of the succession. In allowing private sales of succession property, the requirement of court approval was included as a safeguard against the inappropriate disposition of succession property. *In re Succession of Hollis*, *supra.*

Louisiana Code of Civil Procedure article 3285 codifies an exception to the requirements of articles 3281, 3282, and 3284, and provides:

> A succession representative may sell bonds and shares of stock at private sale at rates prevailing in the open market, by obtaining a court order authorizing the sale. No advertisement is necessary, and the order authorizing the sale may be rendered upon the filing of the petition.

> The endorsement of the succession representative and a certified copy of the court order authorizing the sale shall be sufficient warrant for the transfer.

Comment (b) to La. C.C.P. art. 3285 provides:

> If such stocks or bonds do not have a value in the open market, the provisions of this Code for private sales of movables apply. A succession representative may sell bonds and shares of stock at private sale at rates prevailing in the open market, by obtaining a court order authorizing the sale.

Rachael argues the membership interest in the company was not a stock or bond and did not have a value on the open market; therefore, it should have been sold in accordance with the procedure provided for the private sale of movables. On the other hand, Dan asserts the membership interest in the company is a marketable security akin to shares of stock which was appropriately sold at a private sale at a rate prevailing on the open market because the agricultural vending machines manufactured by the company are located in approximately 16 states across the country. He further argues on appeal that his decision to sell the membership interest to Chip's former partner for $10,000 was made in the best interest of Chip's sole heir, based on information provided by the company's owner that the company was about to be sued for approximately $500,000, which would bankrupt the company.[3] However, Rachael argues that Dan's narrative regarding the decision to sell the membership interest for the fixed price of $10,000 further shows the value of the membership interest was not readily available—supporting her own argument that the membership interest was not a stock or bond with rates prevailing in the open market.

---

[3] The details of the purchase price and buyer do not appear in the trial court record prior to Rachael's petition for nullity of sale and damages, but both parties refer to price and buyer throughout the motion for new trial proceedings and in their arguments on appeal.

4

At the outset, we note there is understandably little documented jurisprudence regarding whether something is a stock or bond under La. C.C.P. art. 3285 since these terms are generally self-evident. In the instant case, the membership interest in the company is clearly not a bond, so the question is whether it is a "stock." Shares of stock are commonly known to be the units into which the ownership interests in a corporation are divided, as represented by the issuance of stock or share certificates. However, the ownership interest of a limited liability company is *not* commonly referred to as a stock, nor do the articles governing Louisiana Limited Liability Company Law, La. R.S. 12:1301, et seq., refer to a person's ownership interest in the company as "stock." A limited liability company ("LLC") is an entity that is an unincorporated association consisting of one or more members whose rights in the LLC, including the member's share of the profits and losses, right to receive distributions of assets, and any right to vote or participate in management, are referred to as a membership interest. La. R.S. 12:1301. As Big Tyme Inventions, LLC, is a limited liability company, not a corporation, Chip's rights in the company should be characterized as a membership interest, not a stock.

Furthermore, even if Chip's rights in the company were stocks or akin to stocks, we find La. C.C.P. art. 3285 would still be inapplicable, as it provides for the sale of bonds or shares of stock only "at rates prevailing in the open market." The record is devoid of any evidence that "shares of stock" of this two-member limited liability company were listed on an exchange or even actively traded over the counter. Chip's membership interest in the company clearly does not have a value in the open market;

5

thus, in accordance with Comment (b) to La. C.C.P. art. 3285, the provisions for private sales of movables apply.

In selling the membership interest, Dan improperly relied on La. C.C.P. art. 3285 to accomplish the sale of the membership interest without complying with the additional requirements for the private sale of succession property—the publication of notice of the sale, La. C.C.P. art. 3282; the opportunity for any heir to oppose such a sale, La. C.C.P. art. 3283; and, the opportunity for the court to provide judicial oversight to ensure the sale is for a fair price, La. C.C.P. art. 3284. The requirements to which we have referred are, in our opinion, mandatory and must be at least substantially complied with to effect a private sale of succession property. *Succession of Doll*, 197 So. 2d 342 (La. App. 2 Cir. 1967).

The trial court erred by executing the July 16, 2018, order authorizing this sale.

In her third assignment of error, Rachael asserts the trial court erred in denying her motion for new trial. Dan argues, however, that Rachael's motion for new trial was not timely. He claims Rachael was aware of the pending succession proceedings and notes the filing of the final account was sufficiently advertised, and no objection was lodged in the record.

Louisiana Code of Civil Procedure art. 3335 provides:

> A copy of any account filed by a succession representative shall be served upon each heir or residuary legatee, together with a notice that the account may be homologated after the expiration of ten days from the date of service and that any opposition thereto must be filed before homologation.

> In the case of any account other than the final account, service on either a resident or nonresident may be made by ordinary mail.

> In the case of a final account, service may be made:

6

(a) in accordance with the provisions of Article 1314;[4] or
(b) by certified or registered mail on either a resident or
nonresident. The certificate of the attorney for the
succession representative that the notice and final
account were mailed to the heir or legatee, together with
the return receipt signed by the addressee shall be filed in
the succession proceeding prior to homologation of the
final account.

A judgment homologating a final account has the same effect as a final judgment in an ordinary action. La. C.C.P. art. 3337. The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.[5] La. C.C.P. art. 1974.

The judgment approving and homologating the final account was filed on August 7, 2018. On June 20, 2019, Rachael filed her motion for new trial, which she argued was timely because she was not served with the August 7, 2018, judgment, or Chip's petition for homologation of final account, filed July 23, 2018. In denying Rachael's motion, the trial court explained orally that it did so in consideration of the following three factors: (1) the August 7, 2018, judgment specifically states, "[d]ue proof having

_____

[4] Louisiana C.C.P. art. 1314 relates to services by the sheriff.

[5] Louisiana C.C.P. art. 1913 provides:
A. Except as otherwise provided by law, notice of the signing of a final judgment, including a partial final judgment under Article 1915, is required in all contested cases, and shall be mailed by the clerk of court to the counsel of record for each party, and to each party not represented by counsel.
B. Notice of the signing of a final default judgment against a defendant on whom citation was not served personally, or on whom citation was served through the secretary of state, and who filed no exception, answer, or other pleading, shall be served on the defendant by the sheriff, by either personal or domiciliary service, or in the case of a defendant originally served through the secretary of state, by service on the secretary of state.
C. Except when service is required under Paragraph B of this Article, notice of the signing of a final default judgment shall be mailed by the clerk of court to the defendant at the address where personal service was obtained or to the last known address of the defendant.
D. The clerk shall file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed.

7

been made before this court that the final account of DAN V. CHISHOLM, administrator, was served on each heir; that the legal delays for filing opposition to the account have elapsed; and that no opposition has been filed;"[6]  (2) the record contains a certificate of publication of the notice of filing of final account; and, (3) the record contains a certificate of no opposition to the final account filed by the clerk on August 6, 2018.

The record before us contains no proof of service upon Rachael of Chip's petition for homologation of final account or the August 7, 2018, judgment.  Louisiana Code of Civil Procedure art. 3335 clearly states a final account filed by a succession representative ***shall be*** served upon each heir and that proof of service ***shall be*** filed in the succession proceeding prior to homologation of the final account.  While the language of the judgment and the clerk's certificate of no opposition might ***suggest*** service was made, they do not ***prove*** service was made.  Likewise, the certification of publication clearly does not prove service—***publication*** is not ***service***.  The appearance that proper procedure was followed cannot compensate for the lack of proof that Rachael was properly served.  We further note the record contains no proof that Rachael was served with Dan's petition to sell securities or the July 16, 2018, order approving the sale.  Because Rachael was not served with the August 7, 2018, judgment homologating final account, the time delays for filing a motion for new trial did not commence.  The trial court erred in denying Rachael's motion for new trial on these grounds.

---

[6] The trial court judge presiding over the motion for new trial was not the same judge who signed the judgment approving and homologizing the final account.  Both parties had new representation by that time as well.

8

Having found Rachael's motion for new trial was timely, we now address her claim that the trial court erred in denying her motion on more substantive grounds. Rachael argues that because the trial court's order authorizing the sale of the membership interest as securities was erroneous, the August 7, 2018, judgment approving and homologating the final account is clearly contrary to the law and evidence; therefore, she is entitled to a new trial. We agree.

> Louisiana Code of Civil Procedure art. 1972 provides:
>
> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

This provision is peremptory; thus, a trial court is obligated to order a new trial if the conditions of article 1972 are met. *Cooper v. Patra*, 51,182 (La. App. 2 Cir. 2/15/17), 215 So. 3d 889, *writs denied*, 2017-0476, 2017-0481 (La. 5/12/17), 219 So. 3d 1104, 1105. Although a trial judge has much discretion in determining if a new trial is warranted, an appellate court may set aside the ruling of the trial judge in a case of manifest abuse of that discretion. *Davis v. Wheeler*, 53,233 (La. App. 2 Cir. 3/4/20), 293 So. 3d 173, *writ denied*, 2020-00781 (La. 10/14/20), 302 So. 3d 1124.

In denying Rachael's motion for new trial, the trial court held the July 16, 2018, order authorizing the sale of the membership interest was not contrary to the law and evidence "because the 55 units were properly characterized as securities." The trial court further stated that its finding was based on La. C.C.P. art. 3285. However, pursuant to this Court's

9

determination that the order authorizing the sale of the membership interest was clearly contrary to the law and evidence, we further hold the August 7, 2018, judgment approving and homologating the final account was likewise clearly contrary to the law and evidence. The trial court's denial of Rachael's motion for new trial was a clear abuse of discretion.

In her last two assignments of error, Rachael asserts the trial court erred by discharging Dan as the succession representative and canceling the bond he had posted. We agree. In accordance with the above holding that the August 7, 2018, judgment homologizing the final account is erroneous, we reverse that portion of the judgment discharging Dan and canceling his bond.

## CONCLUSION

For the foregoing reasons, the trial court's August 7, 2018, judgment approving and homologating the final account in the Succession of Dan "Chip" Chisholm, II, discharging Dan Chisholm as succession administrator, and canceling his bond is set aside, and the trial court's March 6, 2020, judgment denying the motion for new trial filed by Rachael Gray, on behalf of her minor child, is reversed. The matter is remanded for further proceedings in accordance with this opinion. Costs of appeal are assessed to appellee, Dan Chisholm.

**REVERSED AND REMANDED.**